1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9              FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11  MARK ANDERSON, on behalf of himself          No.  2:18-cv-00323-KJM
    and all others similarly situated,
12                                               ORDER
                        Plaintiffs,
13
              v.
14
    SAFE STREETS USA LLC and Does 1
15  through 100, inclusive,

16                      Defendants.

17

18          Defendant Safe Streets USA LLC ("Safe Streets") moves to compel arbitration of

19  most claims and stay all further proceedings in this case filed by plaintiff and former employee,

20  Mark Anderson.  Anderson opposes the motion.  For the following reasons, the court GRANTS

21  Safe Streets' motion.

22  I.      BACKGROUND

23          A.      Factual Background

24          Anderson asserts began working for Safe Streets in October 2014.  Anderson Decl.

25  ¶ 2, ECF No. 10-1.  Safe Streets asserts it hired Anderson on August 19, 2015, but he postponed

26  his start date to October 19, 2015.  Morgan Suppl. Decl. ¶ 4, ECF No. 12-1.[1]  On his hiring date

27  _____

28          [1] The court considers this declaration, filed with Safe Streets' reply, because a defendant
    is not required to establish the authenticity of a plaintiff's signature until the plaintiff challenges

                                            1

of August 19, 2015, he signed several documents on that date as part of the hiring process; his electronic signature appears on the documents next to a date and time stamp. *Id.* ¶¶ 2, 4, 5 & Ex. A at 4, 5, 6, 7, 11, 12, 13. One of these documents, titled "Retention Bonus," contained an "<u>Agreement to Arbitrate</u>." ECF No. 6-3; *see also* Morgan Suppl. Decl. Ex. A at 8 ¶ 2. The arbitration clause is underlined and clearly visible on the first page of the Retention Bonus document. Morgan Suppl. Decl. Ex. A at 8 ¶ 2. The Retention Bonus agreement states in part, in a sub-paragraph titled "<u>Binding Mutual Arbitration</u>":

> You and Safe Streets agree that any Covered Claims (defined below) will be resolved by final and binding arbitration as set forth in this Agreement. The arbitration agreement . . . shall be governed by the Federal Arbitration Act ("FAA") and the law of the State of North Carolina to the extent New Jersey law is not inconsistent with the FAA. This agreement to arbitrate applies with respect to all Covered Claims, whether initiated by you or Safe Streets.

*Id.* ¶ 2.a. Covered Claims as defined by the agreement include:

> [A]ny and all claims or disputes between you and Safe Streets . . . including but not limited to all claims and disputes arising out of or in any way relating to your employment, compensation, benefits and terms and conditions of employment with Safe Streets, or the termination thereof, including but not limited to contract, tort, defamation and other common law claims, wage and hour claims, statutory discrimination, harassment and retaliation claims, and claims arising under or relating to any federal, state or local constitution, statute or regulation, including, without limitation, the [FLSA, Title VII, the ADEA, the WARN Act, the EPA, the ADA, the FMLA,] and any other federal, state or local wage and hour or discrimination law, and any and all other federal, state, or local constitutional, statutory, regulatory, or common law claims or causes of action now or hereafter recognized.

*Id.* at 9 ¶ 2.b.

The agreement further states, in bold capitalized letters, that no claims may be "**INITIATED, MAINTAINED, HEARD OR DETERMINED ON A CLASS, COLLECTIVE, OR REPRESENTATIVE ACTION BASIS EITHER IN COURT OR IN**

---

the signature. *See Espejo v. S. California Permanente Med. Grp.,* 246 Cal. App. 4th 1047, 1060 (2016), *review denied* (Aug. 17, 2016). Moreover, Anderson, who did file a response to Safe Streets' Notice of Supplemental Authority filed after this supplemental declaration, has not objected. *See* ECF Nos. 13-14.

1    **ARBITRATION**," to the maximum extent the law permits.  *Id.* at 9-10 ¶ 2.d.  (emphasis in

2    original).

3         B.    <u>Procedural Background</u>

4              Anderson filed this putative class action against Safe Streets on February 12, 2018.

5    Compl., ECF No. 1.  Anderson alleged claims under the Fair Labor Standards Act ("FLSA"),

6    various sections of the California Labor Code, and the California Business & Professions Code.

7    *Id.* ¶¶ 39-86.  One of Anderson's California Labor Code claims is a Private Attorneys General

8    Act ("PAGA") claim to recover civil penalties.  *Id.* ¶¶ 82-86.

9              On March 9, 2018, Safe Streets moved to compel arbitration, asserting Anderson

10   signed a valid and enforceable arbitration agreement when he started with Safe Streets.  Mot.,

11   ECF No. 6.  Safe Streets contends all claims except for Anderson's PAGA claim fall under the

12   "Covered Claims" section of the arbitration agreement.  *Id.* at 5.  Safe Streets asks the court to

13   stay all further proceedings, including Anderson's PAGA claim, until arbitration resolves his

14   other claims.  *Id.* at 7.

15             Anderson opposes Safe Streets' motion to compel arbitration for several reasons.

16   Opp'n, ECF No. 10.  First, he asserts he does not recall seeing or signing the Retention Bonus

17   agreement.  *Id.* at 9-10; Anderson Decl. ¶ 3.  He says the time stamp by his purported electronic

18   signature shows a time when he typically would "have been in the field working," Safe Streets

19   required "important documents" to be signed "in ink (a wet signature)," Safe Streets' policies do

20   not provide for the use of electronic signatures, and if he would have been provided an arbitration

21   agreement to sign, he would have first reviewed it with his wife who "works in human

22   resources."  Anderson Decl. ¶¶ 4-8.  Second, Anderson argues that even if the agreement is valid,

23   it is unconscionable and may not be enforced.  Opp'n at 14-15.  Third, he claims that the class

24   action waiver clause in the agreement violates the National Labor Relations Act ("NLRA").  *Id.* at

25   16.  Fourth, Anderson contends the arbitration agreement's statement that it "shall be governed by

26   the [FAA] and the law of the State of North Carolina to the extent New Jersey law is not

27   inconsistent with the FAA" renders "the entire agreement potentially unenforceable."  *Id.* at 17-19

28

& n.23.  Fifth, he argues the court should not stay his PAGA claims even if other claims go to arbitration.  *Id.* at 19.

Safe Streets filed a reply to Anderson's opposition.  Reply, ECF No. 12.  First, Safe Streets argues that its evidence is sufficient to prove Anderson signed the agreement.  *Id.* at 1-3.  Second, it argues the agreement is not procedurally or substantively unconscionable.  *Id.* at 6.  Third, Safe Streets argues the class action waiver does not violate the NLRA.  *Id.* at 6-8.  Fourth, the FAA preempts contrary state law, and references to other state laws in the arbitration agreement do not extinguish Anderson's state law claims.  *Id.* at 8-9.  Fifth, courts routinely stay derivative PAGA claims pending arbitration of non-PAGA claims.  *Id.* at 9.

Safe Streets has submitted a notice of supplemental authority on the recently decided Supreme Court case, *Epic Systems Corp. v. Lewis*, 138 S. Ct. 1612 (2018).  ECF No. 13.  Anderson filed a response.  ECF No. 14.  The parties disagree on whether the holding in *Epic Systems* is relevant to their dispute.

II.    LEGAL STANDARD

Congress enacted the Federal Arbitration Act ("FAA") "in response to widespread judicial hostility to arbitration agreements."  *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011).  The FAA provides that "arbitration agreements generally shall be valid, irrevocable, and enforceable."  *Knutson v. Sirius XM Radio Inc*., 771 F.3d 559, 564 (9th Cir. 2014) (citations and internal quotation marks omitted).  Section 2 of the FAA, its "primary substantive provision," *Concepcion*, 563 U.S. at 339 (citation omitted), states "[a] written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.

Section 4 of the FAA allows district courts to hear motions to compel arbitration.  9 U.S.C. § 4.  Generally, in deciding whether to compel arbitration, a court determines two "gateway" issues: (1) whether the parties agreed to arbitrate; and (2) whether their agreement covers the dispute brought before the court.  *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015) (citing *Howsam v. Dean Witter Reynolds, Inc*., 537 U.S. 79, 84 (2002)).  The party

4

moving to compel arbitration bears the burden on each of these elements. *Ashbey v. Archstone Prop. Mgmt., Inc.*, 785 F.3d 1320, 1323 (9th Cir. 2015).

The party opposing arbitration may argue the agreement is unenforceable based on any "'generally applicable contract defenses, such as fraud, duress, or unconscionability,'" but not "defenses that apply only to arbitration." *Concepcion*, 563 U.S. at 343 (quoting *Doctor's Associates, Inc. v. Casarotto*, 517 U.S. 681, 687 (1996)). After all, "'a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.'" *Knutson*, 771 F.3d at 565 (quoting *United Steelworkers of Am. v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582 (1960)). A court may therefore declare an arbitration agreement unenforceable when enforcement would contravene a state's law, but only if that state law is not preempted by the FAA. *See Concepcion*, 563 U.S. at 343. Stated simply, "[w]hen state law prohibits outright the arbitration of a particular type of claim, the analysis is straightforward: The conflicting rule is displaced by the FAA." *Id.* at 341.

"When considering a motion to compel arbitration, a court applies a standard similar to the summary judgment standard" of Federal Rule of Civil Procedure 56. *Concat LP v. Unilever, PLC*, 350 F. Supp. 2d 796, 804 (N.D. Cal. 2004) (citation omitted); *see also Cox v. Ocean View Hotel Corp.*, 533 F.3d 1114, 1119 (9th Cir. 2008) ("[D]enial of a motion to compel arbitration has the same effect as a grant of partial summary judgment denying arbitration . . . ."); *Greystone Nevada, LLC v. Anthem Highlands Cmty. Ass'n*, 549 F. App'x 621, 623 (9th Cir. 2013) (reversing an order compelling arbitration where opposing party had been afforded no opportunity to present evidence and argument). The party opposing arbitration receives the benefit of any reasonable doubts and the court draws reasonable inferences in that party's favor, and only when no genuine disputes of material fact surround the arbitration agreement's existence and applicability may the court compel arbitration. *See Three Valleys Mun. Water Dist. v. E.F. Hutton & Co.*, 925 F.2d 1136, 1141 (9th Cir. 1991) (quoting *Par-Knit Mills, Inc. v. Stockbridge Fabrics Co.*, 636 F.2d 51, 54 (3d Cir. 1980)); *Concat*, 350 F. Supp. 2d at 804.

Nevertheless, the decision to compel arbitration is mandatory, not discretionary, if the requirements are met. *See Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985).

Federal law strongly favors arbitration agreements, *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983).

III.    DISCUSSION

Both parties raise several issues with respect to the agreement. Specifically, the issues are whether (1) the agreement is invalid; (2) the agreement is unconscionable; (3) the agreement's waiver clause violates the NLRA; (4) references to North Carolina or New Jersey law agreement render the agreement unenforceable; and (5) the court should stay Anderson's PAGA claims if the court compels arbitration. The court answers "No" to each question except the last one, as explained below.

A.    Valid Agreement: Anderson's Signature on Agreement?

Anderson asserts he does not recall seeing or signing the Retention Bonus agreement. Opp'n at 9-10; Anderson Decl. ¶ 3. As noted above, he avers that on August 19, 2015, at 12:45 p.m., when he supposedly signed the agreement, he "would typically have been in the field working." Anderson Decl. ¶ 4. He also says, in his sworn declaration, that Safe Streets required "important documents" to be signed "in ink (a wet signature)," Safe Streets' policies do not provide for the use of electronic signatures and had he been given an arbitration agreement to sign, he would have first reviewed it with his wife who "works in human resources." *Id*. ¶¶ 4-8. Safe Streets disagrees, arguing Anderson had to have signed the agreement electronically, along with other "new hire" documents. Reply at 3. It notes, pointing to evidence, that Anderson's new hire forms contain "personal identifying information," including his social security number and address, some of which only Anderson could have known. *Id.*; Morgan Suppl. Decl. ¶ 3. Safe Streets also observes that all of the hiring forms were submitted within fifteen minutes of each other, between 12:29 p.m. and 12:45 p.m. on August 19, and so he must have signed the agreement along with the other documents on that day. Reply at 3; Morgan Suppl. Decl. ¶ 2. Based on the evidence before the court, as explained below, the court finds no reasonable factfinder could conclude that Anderson did not sign the documents.

"To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the

proponent claims it is." Fed. R. Evid. 901(a). Authentication can occur by considering "[t]he appearance, contents, substance, internal patterns, or other distinctive characteristics of the item, taken together with all the circumstances." Fed. R. Evid. 901(b)(4). Additionally, California law recognizes the validity of electronic signatures, stating an "[a]n electronic record or electronic signature is attributable to a person if it was the act of the person. The act of the person may be shown in any manner, including a showing of the efficacy of any security procedure applied to determine the person to which the electronic record or electronic signature was attributable." Cal. Civ. Code § 1633.9(a).

Defendants can meet "their initial burden by attaching to their [motion] a copy of the purported arbitration agreement bearing [plaintiff's] electronic signature." *Espejo v. S. California Permanente Med. Grp.,* 246 Cal. App. 4th 1047, 1060 (2016), *review denied* (Aug. 17, 2016). Defendants have met their burden in this way here. *See* Morgan Decl. Ex. 1, ECF No. 6-3. Once plaintiff "challenge[s] the validity of that signature in his opposition," then defendants need "to establish by a preponderance of the evidence that the signature was authentic." *Espejo,* 246 Cal. App. 4th at 1060*; Ruiz v. Moss Bros. Auto Group, Inc.,* 232 Cal. App. 4th 836, 842-43 (2014). As the *Ruiz* court observed, a defendant's "burden of authenticating an electronic signature is not great." 232 Cal. App. 4th at 844. A number of courts have held that a declaration of human resources staff is sufficient for a defendant to meet the burden. *See, e.g., Gonzalez v. Ceva Logistics U.S., Inc.,* No. 16-CV-04282-WHO, 2016 WL 6427866, at *3 (N.D. Cal. Oct. 31, 2016) (reasoning defendants "offered adequate evidence that only [plaintiff] filled out [the] form" because "it required applicants to fill out detailed personal information that only the application would know" despite not requiring "a unique username and password"); *see also Tagliabue v. J.C. Penney Corp., Inc.,* No. 1:15-CV-01443-SAB, 2015 WL 8780577, at *2-3 (E.D. Cal. Dec. 15, 2015); *Langson v. 20/20 Companies, Inc.,* No. EDCV 14–1360 JGB (SPx), 2014 WL 5335734, *5 (C.D. Cal. Oct. 17, 2014); *Nanavati,* 99 F. Supp. 3d at 1076. *But see Ruiz,* 232 Cal. App. 4th at 844 (finding insufficient declarant's "only offer[ing] her unsupported assertion that [plaintiff] was the person who electronically signed the 2011 agreement").

7

Here, Safe Streets Senior Director of Human Resources, Sarah Morgan, explains that "[d]uring . . . Anderson's engagement with Safe Streets, all on-boarding of new employees was completed electronically." Morgan Suppl. Decl. ¶ 5. "[U]pon his hiring," Anderson, "like all other new Safe Streets employees, would have received an email to complete the on-boarding process electronically." *Id.* That process included "completing, signing, and submitting" documents Morgan that attaches as Exhibit A to her declaration. *Id.* & Ex. A. In several of the documents on which Anderson's name appears as an electronic signature next to the August 19, 2015 date, "Anderson provided his personal identifying information to Safe Streets, which Safe Streets then used in initiating its new employee processing, such as payroll processing." *Id.* ¶ 5. Moreover, "Safe Streets did not have access to Mr. Anderson's personal and confidential information prior to his electronic submission of these electronic on-boarding documents." *Id.* The information Anderson provided includes his social security number, address, phone number and date of birth. *Id.* Ex. A (redacting social security number in compliance with Local Rules). Anderson's personal identifying information appeared specifically on "new hire documents electronically signed by [Anderson] on August 19, 2015 between 12:28:49 EDT and 12:45:35 EDT." *Id.* ¶ 2 & Ex. A. This case is thus unlike *Ruiz*, on which Anderson relies, in which the court's reasoning centered on how the defendant's business manager "did not explain how, or upon what basis, she inferred that the electronic signature on the [agreement] was 'the act of' plaintiff." 232 Cal. App. 4th at 844 (citation omitted).

Morgan confirms Anderson was hired on August 19, 2015 but postponed his start date to October 19, 2015, "based on Mr. Anderson's personnel file." *Id.* ¶ 4. Responding to Anderson's assertion that he "do[es] not know Ms. Morgan and ha[s] never met her," Anderson Decl. ¶ 3, Morgan, while noting her last name changed from Williams to Morgan after July 2016, contends she "had multiple interactions with Mr. Anderson to assist him with Human Resources-related matters, including but not limited to phone calls and emails." Morgan Suppl. Decl. ¶ 6. Morgan attaches to her declaration an email exchange she says she had with Anderson dated September 26, 2016. *Id.* Ex. B. Also attached to Morgan's declaration is a "Retention Bonus"

/////

1    paystub of $500 paid to Anderson "[u]nder the terms of the Retention Bonus [a]greement." *Id.*

2    ¶ 7 & Ex. C; *see also id.* Ex. A at 8 ¶ 1.

3            Given the record before the court, no reasonable factfinder would find Anderson's

4    paperwork could reflect his personal identifying information unless Anderson himself provided

5    the information in filling out the electronic on-boarding documents.  The entry of personal

6    identifying information into an electronic form is similar to the use of a personal login used to

7    access a form; both connect a specific person to a specific form.  *See Newton*, 854 F.Supp.2d at

8    731, 732.  The court assesses Anderson's personal information appearing on the forms, the

9    narrow time frame in which the on-boarding forms were signed and Anderson's receipt of a

10   retention bonus subject to the terms of the Retention Bonus agreement.  *Tagliabue*, 2015 WL

11   8780577, at *2 (considering "[t]he appearance, contents, substance, internal patterns, or other

12   distinctive characteristics of the item, taken together with all the circumstances"; citing Fed. R.

13   Evid. 901(b)(4) (brackets in opinion)).

14           Although Anderson has submitted examples of discipline records showing an ink

15   signature applied by his supervisor and him, *see* Anderson Decl. Ex. 1, this evidence does not

16   undermine Safe Streets' evidence supporting the conclusion that he effected the electronic

17   signature on documents during his completion of the on-boarding process at Safe Streets.

18   Nothing suggests to the court that Safe Streets cannot use two types of signatures for its

19   paperwork.  *See, e.g.*, Anderson Decl. Ex. 2 (Safe Streets Employee Manual of Policies and

20   Procedures dated 2011).  Anderson's other arguments related to the signature also fall short.

21   Anderson maintains that "[d]uring [his] normal workday, at 12:45 p.m.," he "would typically

22   have been in the field working."  Anderson Decl. ¶ 4.  But Anderson does not assert he actually

23   was in the field on August 19, 2015, the electronic signature date; he instead states he "looked at

24   a calendar and August 19, 2015, was a Wednesday."  *Id.* ¶ 4.  Anderson also states he would not

25   have signed the agreement had he known what it was because his wife works in human resources

26   and has told him about these arbitration agreements.  *Id.* ¶ 8.  Although he asserts he "run[s] any

27   type of official document by her," he has not indicated that he ran this agreement by his wife or

28   discussed it with her at all, or what he would have done if he had spoken with her.  *Id.* ¶¶ 1-8

As in the case of *Gonzalez*, 2016 WL 6427866, at *3, defendants' lack of a system requiring a "unique user name and password" does not frustrate defendants' meeting their burden of establishing the authenticity of plaintiff's signature. The system there "required applicants to fill out detailed personal information that only the applicant would know." *Id.* As here, plaintiff has not "offer[ed] an explanation as to how someone else could have known such information or submitted the application in [his] name." *Id.* at *4.

Safe Streets has provided sufficient evidence to meet its burden to show Anderson signed the arbitration agreement. Because Anderson does not dispute that the agreement covers his claims, *compare* Morgan Suppl. Decl. Ex. A at 9 ¶ 2.b (covered claims defined), *with* Compl. ¶¶ 39-86, the court addresses Anderson's argument that the agreement is unconscionable. *See Brennan*, 796 F.3d at 1130.

B.    Unconscionability

Anderson argues the arbitration agreement is unenforceable because it is procedurally and substantively unconscionable. Opp'n at 14. Safe Streets argues Anderson has failed to prove both procedural and substantive unconscionability. Reply at 9. The court finds the agreement is not substantively unconscionable and is therefore enforceable.

"Because unconscionability is a generally applicable defense to contracts, California courts may refuse to enforce an unconscionable arbitration agreement." *Ingle v. Circuit City Stores, Inc.*, 328 F.3d 1165, 1170 (9th Cir. 2003); *Kinney v. United HealthCare Servs., Inc.*, 70 Cal. App. 4th 1322, 1328-29 (1999). The party seeking to establish an unconscionability defense must do so by a preponderance of the evidence. *Peng v. First Republic Bank*, 219 Cal. App. 4th 1462, 1468 (2013); *Serafin v. Balco Properties Ltd., LLC,* 235 Cal. App. 4th 165, 173 (2015).

A contract to arbitrate is unconscionable and unenforceable when it is both procedurally and substantively unconscionable, though both need not be present to the same degree. *Ingle*, 328 F.3d at 1170 (internal quotations omitted) (citing *Armendariz*, 24 Cal. 4th at 114). "In other words, the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required" to find the agreement unenforceable. *Armendariz v.*

10

*Found. Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 114 (2000). The court addresses procedural unconscionability then substantive unconscionability below.

### 1.   Procedural Unconscionability

Under California Law, "[a] contract is procedurally unconscionable if it is a contract of adhesion, i.e., a standardized contract, drafted by the party of superior bargaining strength, that relegates to the subscribing party only the opportunity to adhere to the contract or reject it." *Ting v. AT&T*, 319 F.3d 1126, 1148 (9th Cir. 2003) (citing *Armendariz*, 24 Cal. 4th at 115). Procedural unconscionability focuses on two factors in the contracting process: oppression and surprise. *See Pokorny v. Quixtar, Inc.*, 601 F.3d 987, 996 (9th Cir. 2010); *see also Armendariz*, 24 Cal. 4th at 113. "Oppression addresses the weaker party's absence of choice and unequal bargaining power that results in 'no real negotiation.'" *Pokorny*, 601 F.3d at 996 (quoting *A & M Produce Co. v. FMC Corp*., 135 Cal. App. 3d 473, 486 (1982)). "Surprise involves the extent to which the contract clearly discloses its terms as well as the reasonable expectations of the weaker party." *Chavarria v. Ralphs Grocery Co*., 733 F.3d 916, 922 (9th Cir. 2013) (citing *Parada v. Superior Court*, 176 Cal. App. 4th 1554, 1570 (2009)); *see also Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257, 1280 (9th Cir. 2006) (en banc) (surprise occurs where the allegedly unconscionable provision is "hidden in a prolix printed form") (quoting *Flores v. Transamerica HomeFirst, Inc*., 93 Cal. App. 4th 846 (2001). In California, when the degree of procedural unconscionability of an adhesion agreement is low, it will be enforceable unless the degree of substantive unconscionability is high. *Poublon v. C.H. Robinson Co.*, 846 F.3d 1251, 1263 (9th Cir. 2017) (quoting *Serpa v. California Surety Investigations, Inc.*, 215 Cal. App. 4th 695, 704 (2013)).

### a)   Oppression

An agreement is oppressive if it creates conditions such as unequal bargaining power that result in "no real negotiation." *Pokorny*, 601 F.3d at 996. "An agreement or any portion thereof is procedurally unconscionable if 'the weaker party is presented the clause and told to "take it or leave it" without the opportunity for meaningful negotiation.'" *Id.* (quoting *Szetela v. Discover Bank*, 97 Cal. App. 4th 1094 (2002)). "California courts have held that

oppression may be established by showing the contract was one of adhesion" or that the circumstances surrounding contract formation were oppressive. *Poublon*, 846 F.3d at 1260 (citations omitted).

An adhesion contract is "'a standardized contract, which, imposed and drafted by the party of superior bargaining strength, relegates to the subscripting party only the opportunity to adhere to the contract or reject it.'" *Armendariz*, 24 Cal. 4th at 113 (quoting *Neal v. State Farm Ins. Cos*., 188 Cal. App. 2d 690, 694 (1961)). Where an arbitration agreement was imposed on employees as a condition of employment, the *Armendariz* court found the agreement to be adhesive. *Id.* at 114.

Defendant does not expressly deny the contract here is an adhesion contract, but suggests it does not matter if it is. See Mot.; Reply at 5 (arguing adhesion contracts are not *per se* unconscionable). If Anderson did not sign the agreement, he would not be eligible for a retention bonus. Morgan Suppl. Decl. Ex. A at 8 ¶ 2 ("As a condition of your receipt of the Retention Bonus, you agree to a predispute arbitration clause."). The agreement gives Anderson no choice over which law applies or any discretion to modify, amend or otherwise change provisions. *Id.* at 11 ¶ 4 (permitting Safe Streets to modify, amend or otherwise change "any provision within the [a]greement" at Safe Streets' "sole discretion"). And the agreement, though optional, was presented to Anderson on a take-it-or-leave-it basis. *Id.* at 8 ("While Safe Streets hopes that you accept the retention bonus under the terms set forth herein, you should be aware that this is your individual choice and your decision to accept or not accept the retention bonus and terms of this [agreement] will have no affect [sic] on your employment status with Safe Streets.").

"[T]he adhesive nature of a contract, without more, . . . give[s] rise to a low degree of procedural unconscionability at most." *Poublon*, 846 F.3d at 1261-62 (citation omitted). Anderson advances no argument that the agreement is oppressive, other than its adhesive nature. The Retention Bonus agreement is therefore like the "Incentive Bonus Agreement" in *Poublon*, 8466 F.3d at 1262-63. There, plaintiff's supervisor provided an Incentive Bonus Agreement to review and directed that plaintiff had to sign the agreement within a specified time to receive her bonus. *Id.* at 1258. When plaintiff asked what would happen if she did not sign the agreement,

her supervisors "responded only that she would not receive her bonus." *Id.* at 1262. Although a statement in the agreement read also suggested it was being made "[i]n consideration for Your continued employment," in addition to "Your eligibility for a bonus incentive . . . ," the Ninth Circuit rejected plaintiff's argument that the dispute resolution provision in the agreement "was oppressive because she believed signing the agreement was necessary to remain employed." *Id.* In other words, an arbitration agreement is not oppressive solely because one must agree to it to receive a bonus. So too here.

While the court finds a low degree of oppression, it still must consider surprise to fully determine the question of procedural unconscionability. *See Borelli v. Black Diamond Aggregates, Inc.*, No. 2:14-CV-02093-KJM-KJN, 2017 WL 1063564, at *9 (E.D. Cal. Mar. 21, 2017), *reconsideration denied*, 2017 WL 3438610 (Aug. 10, 2017), *motion to certify interlocutory appeal denied*, 2018 WL 1518678 (Mar. 28, 2018).

b) <u>Surprise</u>

Anderson asserts (1) the arbitration clause here was "buried" in the Retention Bonus agreement; (2) he "did not receive an official notice from Safe Streets about any of these changes to his employment agreement"; and (3) the American Arbitration Association ("AAA") rules, although mentioned in the agreement, were not attached or specifically referenced. Opp'n at 15. Safe Streets responds that (1) the "Agreement to Arbitrate" section of the form is clearly displayed on the first page of the Retention Bonus agreement; (2) Anderson's options did not change during employment because he signed the form at the beginning of his employment; and (3) the AAA rules need not be specifically attached to avoid procedural unconscionability. Reply at 4-6. As explained below, the court finds only the absence of the AAA rules themselves to support an assertion of surprise by Anderson.

First, Anderson argues unpersuasively the arbitration clause was "buried" in the agreement. Opp'n at 15. An arbitration agreement can be procedurally unconscionable if it is "hidden in a prolix printed form." *Nagrampa v. MailCoups, Inc.*, 469 F.3d at 1280 (en banc) (quotation omitted). As Safe Streets points out, however, the "Agreement to Arbitrate" clause of the Retention Bonus agreement is listed on the first page of the document forming this agreement.

13

Morgan Suppl. Decl. Ex. A at 8 ¶ 2.  The writing is underlined and in all capital letters; the document is not lengthy, running only three pages.  *Id.* at 8-11.  Anderson argues the arbitration clause is buried because the Retention Bonus document does not use the word "Agreement" until the second full paragraph.  *See id.* at 8.  This observation does change the fact that the "Agreement to Arbitrate" clause is clearly visible on the first page of the document.

Second, Anderson argues his options for dispute resolution changed during his employment without notice, Opp'n at 15, an argument that hinges on whether he in fact signed the agreement on August 19, 2015.  The court has found above that Anderson did sign the agreement on August 19, 2015, meaning that his argument that his options changed during employment without notice fails.  The agreement is not procedurally unconscionable in this way.

Third, Anderson argues the agreement mentions the AAA rules without specifically attaching or referencing them.  Opp'n at 15.  The Ninth Circuit is clear that "incorporation [of the AAA rules] by reference, without more, does not affect the finding of procedural unconscionability."  *Poublon*, 846 F.3d at 1262.  While courts may "more closely scrutinize the substantive unconscionability" of terms that appear only in AAA rules, including them in an agreement only by reference does not automatically equate to procedural unconscionability.  *Id.* (quoting *Baltazar v. Forever 21, Inc.*, 62 Cal. 4th 1237, 1246 (2016)).  Because the agreement is minimally oppressive, as discussed above, the omission of the AAA rules themselves from the agreement informs the degree of overall procedural unconscionability.  *Borelli*, 2017 WL 1063564, at *9.  Still, although the agreement reflects some oppression and surprise, the procedural unconscionability of the agreement remains minimal; the agreement therefore must reflect a high degree of substantive unconscionability for the agreement to be unenforceable.  *Poublon*, 846 F.3d 1251 at 1263.

### 2. Substantive Unconscionability

Anderson contends the agreement is substantively unconscionable.  Opp'n at 15.  Safe Streets disagrees. Reply at 6.  Anderson's position appears based on his summary argument that the state "law selection and class action waiver provisions" are unconscionable, and Safe

Streets assumes as much. *Id.*; *see* Morgan Suppl. Decl. Ex. A at 8-9 ¶¶ 2.a., 2.d; *see also* Reply at 6.

Courts have held that an arbitration agreement must be "overly harsh," "unduly oppressive," "unreasonably favorable" or must "shock the conscience" to be substantively unconscionable. *Poublon*, 846 F.3d at 1261 (quoting *Sanchez v. Valencia Holding Co., LLC*, 61 Cal. 4th 899, 912 (2015)). Courts are largely concerned with terms that are "unreasonably favorable to the more powerful party." *Tompkins v. 23andMe, Inc.*, 840 F.3d 1016, 1023 (9th Cir. 2016) (quoting *Sonic-Calabasas A, Inc. v. Moreno*, 57 Cal. 4th 1109, 1145, (2013)). The court thus examines the class action waiver clause and choice-of-law provisions through these lenses.

### a)    Class Action Waiver and the NLRA

Anderson contends "the class action waiver clause in the Retention Bonus [a]greement violates the [NLRA]" based on binding Ninth Circuit authority. Opp'n at 16 (citing *Morris v. Ernst & Young*, 834 F.3d 975, 980 (9th Cir. 2016)). Since the parties briefed this motion, the Supreme Court decided the case of *Epic Systems Corp. v. Lewis*, 138 S. Ct. 1612 (2018). *See* Notice of Suppl. Authority, ECF No. 13. Safe Streets asserts *Epic Systems* expressly rejected the argument that arbitration agreements requiring individual arbitration violate the NLRA. *Id.* at 2. Anderson acknowledges the decision in *Epic Systems* and does not dispute Safe Streets' characterization of it, but instead clarifies that his class action waiver argument is not his primary argument. *See* ECF No. 14 at 2-3.

In *Epic Systems,* the Supreme Court observed the FAA is "a congressional command requiring [the Supreme Court] to enforce, not override, the terms of the arbitration agreements before [it]," agreements that required individualized arbitration proceedings. *Epic Systems*, 138 S. Ct. at 1620, 1623; *see* Morgan Suppl. Decl. Ex. A at 9 ¶ 2.d. (waiving class, collective or representative action basis for any covered claims in court or in arbitration). The Supreme Court determined it could not infer that the NLRA contains a "congressional command to displace the [FAA] and outlaw agreements" that require individualized arbitration. *Id.* at 1624-28. In effect, as a sister court has observed, "the Supreme Court reversed the Ninth Circuit's determination [in *Morris*, 834 F.3d 975,] that the mere inclusion of a concerted action waiver in

15

an arbitration agreement rendered said agreement invalid and unenforceable as a standalone defense to arbitration." *Davis v. Red Eye Jack's Sports Bar, Inc.*, No. 317CV01111BENJMA, 2018 WL 2734037, at *2 (S.D. Cal. June 7, 2018). This court, bound by the Supreme Court, cannot void Safe Streets' agreement with Anderson in light of the NLRA, simply because it contains a class action waiver.

The court also does not find the class action waiver alone sufficient to render the agreement substantively unconscionable. As the Ninth Circuit found in *Johnmohammadi v. Bloomingdale's, Inc.*, 755 F.3d 1072, 1075 (9th Cir. 2014), there is no basis here "for concluding that [Safe Streets] interfered with or restrained [Anderson] in the exercise of [his] right to file a class action." If Anderson "wanted to retain that right, nothing stopped [him] from opting out of the arbitration agreement" by declining to sign the Retention Bonus agreement and declining to receive a retention bonus. *Id.* at 1075-76. As the Ninth Circuit reasoned, "In the absence of any coercion influencing the decision, we fail to see how asking employees to choose between those two options can be viewed as interfering with or restraining their right to do anything." *Id.* at 1076. Here, Anderson alleges no coercion, and the terms of Retention Bonus agreement themselves are not coercive. *See, e.g.*, Morgan Suppl. Decl. Ex. A at 8 ("While Safe Streets hopes that you accept the retention bonus under the terms set forth herein, you should be aware that this is your individual choice and your decision to accept or not accept the retention bonus and terms of this [agreement] will have no affect [sic] on your employment status with Safe Streets."); *id.* at 9 ¶ 2.c. ("Safe Streets shall not discipline, discharge, or engage in any retaliatory actions against you in the event you choose to [challenge the validity of the terms and conditions of the agreement] or engage in any other protected legal activity.").

Notwithstanding the foregoing, Anderson makes an additional argument that could support a finding of substantive unconscionability.

### b) Choice-of-Law and FAA Preemption

Anderson contends the Retention Bonus agreement's arbitration clause is unenforceable because Safe Streets seeks to enforce an agreement "governed by the [FAA] and the law of the State of North Carolina to the extent New Jersey law is not inconsistent with the

16

FAA." Morgan Suppl. Decl. at 8 ¶ 2.a.; *see* Opp'n at 17-19. Anderson contends this provision is

sufficiently ambiguous to preclude enforcement of the agreement and asserts California law

should govern under California's choice-of-law doctrine because "North Carolina and New Jersey

law run headlong into a conflict with a fundamental California public policy of protecting its

employees." Opp'n at 17 n.23, 18. Anderson asserts "[n]either state has a counterpart to" the

multiple California statutory provisions under which Anderson sues. *Id.* at 18. Safe Streets

responds that the agreement's language is sufficient to "bring the [a]greement within the purview

of the FAA," which preempts state law, and the "reference to New Jersey and North Carolina

laws" does not "extinguish any claims [Anderson] may have under California law" or render the

agreement unenforceable. Reply at 8-9.

The Supreme Court has rejected arguments that state law or a state's public policy

determines enforceability of an arbitration agreement that invokes the FAA, as does the

agreement here. *See, e.g.*, *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 442-43, 445-

46 (2006). The Court has consistently reasoned "that questions of arbitrability in contracts

subject to the FAA must be resolved with a healthy regard for the federal policy favoring

arbitration." *Volt Info. Scis., Inc. v. Bd. of Trustees of Leland Stanford Junior Univ.*, 489 U.S.

468, 475 (1989). Ultimately, "[w]hen state law prohibits outright the arbitration of a particular

type of claim, the analysis is straightforward: The conflicting rule is displaced by the FAA." *See*

*Concepcion*, 563 U.S. at 341.

Here, despite the agreement's express invocation of the FAA, Anderson raises no

concrete concerns about the effect of North Carolina or New Jersey law; nor does he explain how

references to North Carolina law or New Jersey law render the agreement substantively

unconscionable. The choice-of-law provision in the agreement does qualify the references to

state law with the words, "to the extent New Jersey law is not inconsistent with the FAA."[2] With

these words, the provision is sufficiently clear to resolve any potential conflicts between state law

---

[2] The court notes Safe Streets "is headquartered in Garner, North Carolina." Morgan Suppl. Decl. ¶ 1; *see* Morgan Decl., ECF No. 6-2 (declaration executed "at Garner, North Carolina"). There is no apparent basis in the record for the agreement's reference to New Jersey, although the court need not resolve the apparent consistency here.

and the FAA in favor of the FAA, eliminating any ambiguity.  In any event, to the extent North Carolina or New Jersey law would outright prohibit arbitration of Anderson's non-PAGA claims, the FAA would preempt.  *See Concepcion*, 563 U.S. at 341.

As in other cases reviewing similar agreements, the clause Anderson cites "appears to govern the interpretation of the arbitration agreement only, and does not appear [to] relate to the substantive legal claims that are subject to arbitration."  *Morse v. ServiceMaster Glob. Holdings Inc.*, No. C 10-00628 SI, 2011 WL 3203919, at *3 (N.D. Cal. July 27, 2011); (construing clause stating arbitration agreements "will be governed and construed in accordance with the Federal Arbitration Act; provided, however, to the extent substantive state law is applicable, the laws of the State of Tennessee shall apply [without regard to state conflict law]"); *Nakano v. ServiceMaster Glob. Holding Inc.*, No. C 09-05152 SI, 2011 WL 3206592, at *3 (N.D. Cal. July 27, 2011) (applying same principle).  Fundamentally, Safe Streets is correct that Anderson "confuses the issues of what law governs the enforceability of the arbitration provision in the [a]greement and what law governs [Anderson's] claims."  Reply at 9.

Here, the agreement contemplates the possibility Anderson will bring claims based on California law by including as covered claims in the agreement "any other federal, state or local wage and hour or discrimination law, and any and all other federal, state, or local constitutional, statutory, regulatory, or common law claims or causes of action now or hereafter recognized."  Morgan Suppl. Decl. at 9 ¶ 2.b.  "[T]he arbitrator is authorized to award any party the full remedies that would be available to such party if the Covered Claim has been filed in a court of competent jurisdiction, including attorneys' fees and costs."  *Id.* at 10 ¶ 2.f.  Were Anderson's California claims not covered claims, then the court could not require those claims to go to arbitration.  Because Anderson's California claims are covered claims expressly contemplated by the Retention Bonus agreement, the choice-of-law provision governing the law that applies to interpreting the Retention Bonus agreement does not have the effect of eliminating the covered claims.  *See DPR Constr. v. Shire Regenerative Med., Inc.*, 204 F. Supp. 3d 1118, 1128 (S.D. Cal. 2016) ("Terms of a contract should be harmonized if possible.") (citing Cal. Civ. Code § 1652; *In re Marriage of Williams*, 29 Cal. App. 3d 368, 379 (1972)).

The court finds the agreement's choice-of-law provision is not so ambiguous to preclude enforcement of the Retention Bonus agreement in full.  Nor does the court find this provision "overly harsh," "unduly oppressive," "unreasonably favorable" or that it "shock[s] the conscience."  *Poublon*, 846 F.3d at 1261.

Because the court does not find the agreement substantively unconscionable on the grounds Anderson asserts and the degree of procedural unconscionability is low, the court finds the agreement enforceable.  *See Poublon*, 846 F.3d at 1263.

C.      Stay of PAGA Claims

The parties agree that Anderson's PAGA claims should not be arbitrated, but they disagree as to whether the PAGA claims should be stayed if the non-PAGA claims are submitted to arbitration.  Safe Streets contends a stay "will promote judicial efficiency and conserve judicial resources" because resolution against Anderson in arbitration would deprive Anderson of standing to pursue his PAGA claim.  Mot. at 7 & n.3 (citing California district court cases staying non-arbitrable PAGA claims).  Anderson opposes, citing to *Totten v. Kellogg Brown & Root, LLC*, 152 F. Supp. 3d 1243, 1266-68 (C.D. Cal. 2016).  The court will stay any PAGA claim pending arbitration of non-PAGA claims.  *See, e.g.*, *Borelli*, 2017 WL 1063564, at *12.

The Ninth Circuit has held the FAA cannot preempt California law to allow PAGA claims to be waived in an employment contract.  *See Sakkab v. Luxottica Retail N. Am. Inc.*, 803 F.3d 425, 431 (9th Cir. 2015).  Additionally, "[t]he California Supreme Court's decision in [a PAGA waiver case] expresses no preference regarding whether individual PAGA claims are litigated or arbitrated.  It provides only that representative PAGA claims may not be waived outright."  *Id.* at 434 (discussing *Iskanian v. CLS Transportation Los Angeles, LLC*, 59 Cal. 4th 348 (2014)).  The Ninth Circuit therefore permits district courts discretion to decide how to address PAGA claims that are not "waived outright."  *Id.*

Multiple district courts, including this court, have held that where PAGA claims are derivative of substantive claims that must be arbitrated, and thus their resolution depends on the outcome of arbitration proceedings, a court may stay any PAGA claims until arbitration is

completed.  *See, e.g.*, *Borelli*, 2017 WL 1063564, at \*12; *see also Shephardson v. Adeco USA, Inc.*, No. 15-cv-05102-EMC, 2016 WL 1322994, \*6 (N.D. Cal. April 5, 2016).  The case to which Anderson points, *Totten*, 152 F. Supp. 3d at 1266-68, is distinguishable in that it did not involve a court considering a stay of non-arbitrable PAGA claims or an analysis of whether PAGA claims were derivative of other claims.  Instead, the court in that case denied a motion to dismiss plaintiff's PAGA claims and declined to extend an automatic bankruptcy stay to a non-debtor party absent "a bankruptcy court order" doing so.  *Id.* at 1268; *see also Hartley v. On My Own Cmty. Servs.*, No. 2:17-cv-00353-KJM-EFB, 2018 U.S. Dist. LEXIS 129264, at \*5 (E.D. Cal. Aug. 1, 2018) (declining request to stay PAGA claim pending arbitration because moving party contended "without authority" that a simultaneous proceeding would disrupt arbitration and render it ineffective).

Here, Anderson's PAGA claim is derivative of his substantive claims.  *Compare* Compl. ¶¶ 49-81 (non-PAGA claims brought under various sections of the California Labor Code), *with id.* ¶ 83 (PAGA claim asserting violations of the same sections of the California Labor Code).  Anderson claims a status as an aggrieved employee that relies on the same injuries giving rise to his non-PAGA claims, such as his alleged "lack of rest periods, paid earned wages owed, including proper overtime and double time pay," lack of reimbursement "for work-related expenses," lack of "provided signed commission statements," deductions from his wages and not being provided accurate wage statements as required by state law.  *Id.* ¶ 83.  The court therefore STAYS Anderson's PAGA claim until arbitration is completed.

IV.    CONCLUSION

For the foregoing reasons, the court GRANTS Safe Streets' motion to compel arbitration and STAYS all further proceedings until the parties notify the court that arbitration is complete.  The court ORDERS the parties to notify the court within seven (7) days

/////

/////

20

and to submit a Joint Status Report within thirty (30) days after arbitration is complete explaining the parties' positions on scheduling of the balance of the case.

IT IS SO ORDERED.

DATED:  August 28, 2018.

_____
UNITED STATES DISTRICT JUDGE