UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

Mark Anderson,

                Plaintiff,

     v.

Safe Streets USA LLC, et al.,

                Defendant.

No. 2:18-CV-00323-KJM-JDP

ORDER

Lead plaintiff Mark Anderson moves for preliminary approval of settlement.  He filed this putative class action on behalf of installation technicians against their employer, defendant Safe Streets USA LLC (Safe Streets), alleging defendant did not compensate them for overtime, double time, or work equipment expenses in violation of the Fair Labor Standards Act (FLSA) and California's Private Attorney General Act (PAGA).  Mot., ECF No. 43.  Safe Streets does not oppose the pending motion.  Mem. P. & A. at 9, ECF No. 43-1.[1]  The court submitted the matter on the papers.  Minute Order, ECF No. 44.  As explained below, **the motion is granted.**

/////

---

[1] The court cites to page numbers applied by the court's CM/ECF system, located at the top of each page.

1

I.     FACTUAL ALLEGATIONS AND PROCEDURAL BACKGROUND

From October 2014 through July 2017, Safe Streets employed plaintiff as a service technician, also known as an installation technician or consultant, in Michigan and California. Compl. ¶¶ 2, 6, ECF No. 1; Workman Decl. ¶ 2, ECF No. 43-2.  Safe Streets required plaintiff and similarly situated employees to regularly work hours beyond their set schedule of forty hours a week, without compensation for overtime or double time.  Compl. ¶¶ 30, 33.  Plaintiff also alleges Safe Streets did not account for the value of missed rest breaks when calculating earned wages for him and similarly situated employees.  *Id*. ¶ 37.  Safe Streets did not provide technicians with a commission plan setting forth how it calculates commissions.  *Id*. ¶ 36.  Safe Streets additionally deducted from plaintiff's wages and those of similarly situated employees' expenses incurred by Safe Streets for mailing work-related packages through FedEx; it did not reimburse technicians for internet access, personal cell phone use, or purchases of electronic equipment and tools required to perform their job duties.  *Id*. ¶ 38.  The complaint is styled as a putative Rule 23 class action and FLSA collective action.  *See generally* Compl.  The putative class includes those with state law claims, i.e., plaintiff and any similarly situated hourly employees identified by plaintiff who worked as service technicians for defendant in California at any time during the Class Period, from November 20, 2016 through March 5, 2021.  *Id*. ¶ 20.  The FLSA collective, which is not relevant to the pending motion, included plaintiff and any similarly situated hourly employees in California and throughout the United States, who, within the Class Period, worked more than forty hours in a single work week.  *Id*. ¶¶ 9 & 40.

After plaintiff filed the complaint, Safe Streets moved to compel arbitration.  *See* ECF No. 6.  It sought to enforce an arbitration agreement plaintiff had signed when he started employment with Safe Streets.  *See id*.  The court granted Safe Streets' motion to compel arbitration of plaintiff's individual claims, except for Anderson's PAGA claims, *see* Order (Aug. 29, 2018) at 19, ECF No. 19, and stayed all proceedings before this court pending the parties' notification that arbitration was completed.

On November 18, 2019, the parties participated in an arbitration hearing before Mark I. Schickman.  *See* Jt. Status Report at 2, ECF No. 30.  The parties completed arbitration on

November 20, 2019.  *Id*.  In advance of the November 18 arbitration hearing, the parties conducted out-of-state depositions of plaintiff's manager and human resources personnel.  Mot. at 13.  Following the arbitration hearing, defendant produced materials regarding the class members, including time records and payroll data that contained information regarding periods of employment, rates of pay, policies and procedures, and other relevant documents.  *Id*.  On March 11, 2020,  the arbitrator issued his tentative decision granting a partial award for plaintiff and on May 22, 2020, he issued his final decision  confirming his March 11 award.  Jt. Status Report at 2.  The arbitrator found defendant (1) did not compensate plaintiff for all work-related expenses, (2) did not compensate plaintiff for all non-productive time, and (3) did not provide plaintiff with accurate wage statements.  Workman Decl. ¶ 3.  The arbitration award has been effected and is not part of the settlement.  *See id*. ¶ 12 (explaining settlement calculations are only for PAGA claims).  Accordingly, plaintiff's FLSA claim is no longer part of this action.  Mot. at 4.

For the remaining claim, plaintiff alleges on behalf of himself and other members of the PAGA group, that defendant (1) did not timely pay its California installation consultants all wages owed, in violation of California Labor Code sections 201–202, 204, and (2) unlawfully collected wages from installation consultants in violation of California Labor Code section 221.  Workman Decl. ¶ 2.

On August 13, 2021, the parties engaged in a mediation regarding the PAGA claim before David Rotman, an experienced wage and hour class action mediator.  Mot. at 13.  Prior to mediation, plaintiff retained expert Jarret Gorlick, to conduct an analysis of Safe Streets' potential exposure in the face of the PAGA claims.  Workman Decl. ¶ 12.  At the conclusion of the mediation, Mr. Rotman made a mediator's proposal, which the parties ultimately accepted.  *Id*.  After further negotiations, the parties agreed to the terms of the settlement for which they now seek approval, settling the PAGA claim, Cal. Labor Code § 2698 *et seq*.  *Id*.  Under the settlement, Safe Streets agrees to pay a "Gross Settlement Value" of $1,490,000.00.  Settlement Agreement ¶ 3, ECF No. 43-2.

Several deductions would be taken from the gross settlement value before any funds are distributed to the putative class.  First, under California law, the California Labor and Workforce

1   Development Agency (LWDA) will be paid $800,000 for the settlement of the PAGA claims

2   ("LWDA Payment Amount").  *See* Cal. Lab. Code § 2699(i).[2]  Second, attorneys' fees would be

3   paid in the amount of $491,700, and litigation expenses paid up to $25,000; Safe Streets agrees

4   not to object to these amounts.  *See* Settlement Agreement ¶ 62; Workman Decl. ¶ 26.  Third, as

5   the agreement proposes, a class representative service award would be paid to plaintiff in the

6   amount of $10,000.00; Settlement Administrator fees also would be paid up to $12,000.00.

7   Settlement Agreement ¶ 3.  Fourth, the Gross Settlement Value would be reduced by the amount

8   of any administration costs, but the agreement limits that deduction to $25,000.  *Id*. ¶ 3.  After

9   these deductions, the payments to each employee would be prorated by the number of weeks that

10  each participating class member was employed with Safe Streets from November 20, 2016

11  through March 5, 2021.  *Id*. ¶ 52.  The average amount each member will receive is

12  approximately $6,495.00.  Workman Decl. ¶ 12.

13      If this court approves the settlement agreement, a settlement administrator would establish

14  a Qualified Settlement Fund under Internal Revenue Service rules and regulations, and deposit

15  the Gross Settlement Amount into this Fund.  *Id*. ¶ 54.  Defendant will provide the names, last

16  known address, social security number, and periods of employment in California of all class

17  members to the settlement administrator.  *Id*. ¶ 60.  The settlement administrator will calculate the

18  settlement payments and allocation of those payments to unpaid wages, expense reimbursements,

19  penalties and interest, within ten calendar days of the court's order granting preliminary approval.

20  *Id*.

21      The settlement administrator will run the Class Data list through the National Change of

22  Address database and use the most recent address for each Class Member – either from

23  defendant's records or the National Change of Address database – before mailing the Notice of

24  Class Settlement.  *See id*.  The settlement administrator also will take reasonable steps to locate

25  any Class Member whose Notice of Class Settlement is thereafter returned as undeliverable.  *Id*.

---

[2] To calculate the "LWDA Payment Amount" the parties propose subtracting seventy-five percent (75%) of the $800,000 allocated from the Gross Settlement Amount for the settlement of the PAGA claims less attorneys' fees and litigation costs, any Enhancement Award, and settlement administration fees and costs approved by the Court.  *See* Settlement Agreement ¶ 18.

The Class Data will be provided in a secure format to be determined by the settlement administrator and defendant.  *Id*.  The settlement administrator will establish a toll-free telephone number to receive calls from Class Members.  *Id*.  And the Notice will provide Class Members with the opportunity to opt out of the settlement.  *See id*.

## II.    LEGAL STANDARDS

### A.    Overarching Principles

"Courts have long recognized that 'settlement class actions present unique due process concerns for absent class members.'"  *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998), *overruled in part on other grounds by Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011)).  When it comes to settlement, the class's motivations may not perfectly square with those of its attorneys.  *See id.*  An attorney representing a settlement class may be tempted to accept an inferior settlement in return for a higher fee.  *Knisley v. Network Associates, Inc.*, 312 F.3d 1123, 1125 (9th Cir. 2002).  Likewise, defense counsel may be happy to pay his counterpart a bit more if the overall deal is better for his client.  *See id.*; *see also In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Products Liab. Litig.*, 55 F.3d 768, 778 (3d Cir. 1995) (noting criticism that settlement class can be vehicle for collusive settlements that primarily serve the interests of defendants and of plaintiffs' counsel).  In addition, if the settlement agreement is negotiated before the class is certified, as it has been in this case, the potential for an attorney's breach of fiduciary duty looms larger still.  *Radcliffe v. Experian Info. Solutions Inc.*, 715 F.3d 1157, 1168 (9th Cir. 2013).

As the Ninth Circuit has recognized, however, the "governing principles may be clear, but their application is painstakingly fact-specific," and the court normally sees only the final result of the parties' bargaining.  *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003).  "Judicial review also takes place in the shadow of the reality that rejection of a settlement creates not only delay but also a state of uncertainty on all sides, with whatever gains were potentially achieved for the putative class put at risk."  *Id.*  Federal courts have long recognized a "strong" policy in favor of settling class actions."  *Adoma v. Univ. of Phoenix, Inc.*, 913 F. Supp. 2d 964, 972 (E.D. Cal. 2012) (citing *Class Plaintiffs v. Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992)).

### B.    Rule 23

Here, as noted plaintiff requests preliminary approval of class settlement under Rule 23 of a putative class action claim based on PAGA.  Mot. at 15–28; *see Haralson v. U.S. Aviation Servs. Corp.*, 383 F. Supp. 3d 959, 971 (N.D. Cal. 2019) (noting court must "review and approve any settlement of any civil action filed pursuant to [PAGA]").  Under Rule 23, before notice of a proposed settlement can be sent to a class, the court must determine that it "will likely be able to" both (1) "certify the class for purposes of the judgment on proposal" and (2) "approve the proposal under Rule 23(e)(2)."  Fed. R. Civ. P. 23(e)(1)(B).  The first requirement, likelihood of class certification, requires a plaintiff to satisfy the four prerequisites of Rule 23(a) and show his claim fits within one of the three categories of Rule 23(b).  *See Walker v. Life Ins. Co. of the Sw.*, 953 F.3d 624, 630 (9th Cir. 2020).  The second requirement, likely approval under Rule 23(e)(2), focuses on the fairness of the settlement for absent class members.  The court evaluates preliminarily whether the proposed settlement "is fair, reasonable, and adequate," considering several factors listed in the Rule, such as whether the parties negotiated at arm's length and the terms of any agreement on fee awards.  *See* Fed. R. Civ. P. 23(e)(2)(A)–(D).  Over the years, the Ninth Circuit has also listed several additional "guideposts," "warning signs," and "red flags" for district courts to consider, such as the strength of the plaintiffs' case and the amount of fees in proportion to the compensation to class members.  *See In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*, 895 F.3d 597, 610–11 & nn.18–19 (9th Cir. 2018), *cert. denied sub nom. Fleshman v. Volkswagen, AG*, 139 S. Ct. 2645 (2019).

### C.    PAGA Claims – Special Considerations

When plaintiffs bring a PAGA action, they do so as the "proxy or agent of the state's labor law enforcement agencies, . . . who are real parties in interest."  *Sakkab v. Luxottica Retail N. Am. Inc.*, 803 F. 3d 425, 435 (9th Cir. 2015).  Any PAGA judgment binds not only members of the class, but similarly situated workers who opt out of the class and the state's labor law enforcement agencies.  *Arias v. Superior Court*, 46 Cal. 4th 969, 986 (2014).  "[W]here plaintiffs bring a PAGA representative claim, they take on a special responsibility to their fellow aggrieved workers who are effectively bound by any judgment."  *O'Connor v. Uber Technologies, Inc.*,

201 F. Supp. 3d 1110, 1133 (N.D. Cal. 2016) (citing *Iskanian v. CLS Transp. Los Angeles, LLC*, 59 Cal. 4th 348, 381 (2014)).

A court analyzing the compromise of a PAGA claim must therefore consider whether the settlement is "'fundamentally fair, reasonable, and adequate' with reference to the public policies underlying the PAGA." *O'Connor*, 201 F. Supp. 3d at 1133 (citation omitted); *Haralson v. U.S. Aviation Servs. Corp.*, 383 F. Supp. 3d 959, 979 (N.D. Cal. 2019). "By providing fair compensation to the class members as employees and substantial monetary relief, a settlement not only vindicates the rights of the class members as employees but may have a deterrent effect upon the defendant employer and other employers, an objective of PAGA." *O'Connor*, 201 F. Supp. 3d at 1134.

## III.    DISCUSSION

### A.    Putative Class

Plaintiff's proposed definition of the class by virtue of settlement is as follows: "service technicians identified by Defendant who worked for Defendant in California from November 20, 2016, through March 5, 2021." Settlement Agreement ¶¶ 6 & 7. As noted above, Rule 23(a) imposes four prerequisites on every class. If these prerequisites are satisfied, the proposed class must fit the requirements of one of the three subsections of Rule 23(b). Finally, Rule 23(e) imposes several additional requirements for purposes of settlement including for purposes where, as here, the parties have proposed to settle a putative class action that asserts a claim based on PAGA.

#### 1.    Rule 23(a): Four Prerequisites

The first prerequisite of Rule 23(a) is that the class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Joinder is "impracticable" when it is difficult or inconvenient. *Smothers v. NorthStar Alarm Servs., LLC*, No. 17-00548, 2019 WL 280294, at *4 (E.D. Cal. Jan. 22, 2019) (citing *In re Itel Sec. Litig.*, 89 F.R.D. 104, 112 (N.D. Cal. 1981)). Although "no fixed number . . . satisfie[s] the numerosity requirement, as a general matter, a class greater than forty often satisfies the requirement, while one less than twenty-one does not." *Ries v. Ariz. Beverages USA LLC*, 287 F.R.D. 523, 526 (N.D. Cal. 2012).

Here, there are approximately one hundred thirty-seven putative class members. *See* Workman

Decl. ¶ 12.  Joinder of each member as a party would be impracticable.  The numerosity

requirement is satisfied.

Second, a proposed class can be certified only if there are "questions of law or fact

common to the class." Fed. R. Civ. P. 23(a)(2).  The "claims must depend upon a common

contention" that is "capable of classwide resolution—which means that determination of its truth

or falsity will resolve an issue that is central to the validity of each one of the claims in one

stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).  The court considers "the

capacity of [the] classwide proceeding to generate common answers" and takes note of

"[d]issimilarities within the proposed class [] [that] have the potential to impede the generation of

common answers." *See Millan v. Cascade Water Servs., Inc.*, 310 F. R. D. 593, 604 (E.D. Cal.

2015) (quoting *Dukes*, 564 U.S. at 350) (internal quotation marks omitted).  "[C]ommonality is

generally satisfied where . . . 'the lawsuit challenges a system-wide practice or policy that affects

all of the putative class members.'" *Franco v. Ruiz Food Prods., Inc.*, No. 10-02354,

2012 WL 5941801, at *5 (E.D. Cal. Nov. 27, 2012) (quoting *Armstrong v. Davis*, 275 F. 3d 849,

868 (9th Cir. 2001), *abrogated on other grounds by Johnson v. California*, 543 U.S. 499, 504–05

(2005)).  That is likely to be true here.  Plaintiff asserts claims arising from uniform wage and

hour policies and practices applied to service technicians who worked for Safe Streets in

California for a defined period, from November 20, 2016, through March 5, 2021.  Workman

Decl. ¶¶ 11–12.  The case presents common questions suitable to resolution "in one stroke" in a

class action.  *Dukes*, 564 U.S. at 350.  Thus, the commonality requirement is met.

Third, "the claims or defenses of the representative part[y]" must be "typical of the claims

or defenses of the class." Fed. R. Civ. P. 23(a)(3).  "Measures of typicality include 'whether

other members have the same or similar injury, whether the action is based on conduct, which is

not unique to the named plaintiffs, and whether other class members have been injured by the

same course of conduct.'" *Torres v. Mercer Canyons Inc.*, 835 F.3d 1125, 1141 (9th Cir. 2016)

(quoting *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992), *overruled in part on

other grounds by Dukes*, 564 U.S. at 338)).  Under this "permissive" requirement, "representative

1  claims are 'typical' if they are reasonably coextensive with those of absent class members; they

2  need not be substantially identical." *Parsons v. Ryan*, 754 F.3d 657, 685 (9th Cir. 2014) (quoting

3  *Hanlon*, 150 F.3d at 1020).  Here, plaintiff alleges he was not properly compensated under

4  policies applicable to each member of the entire putative class.  He avers his claims are identical

5  to those of the other proposed class members.  *See* Anderson Decl. ¶ 8, ECF No. 43-3 (explaining

6  he brought this action based on identical "duties and responsibilities of a service technician for

7  Safe Streets and the employment policies and practices that applied to a Safe Streets'

8  technician").  On this record, the typicality requirement is satisfied.

9  Fourth, the class representative and his counsel must "fairly and adequately protect the

10  interests of the class."  Fed. R. Civ. P. 23(a)(4).  Courts consider both whether "(1) [] the named

11  plaintiffs and their counsel have any conflicts of interest with other class members and (2) [] the

12  named plaintiff and their counsel [will] prosecute the action vigorously on behalf of the class[.]"

13  *Hanlon*, 150 F.3d at 1020.  "Serious conflicts of interest can impair adequate representation by

14  the named plaintiffs, yet leave absent class members bound to the final judgment, thereby

15  violating due process."  *In re Volkswagen*, 895 F.3d at 607.  Here, there is no indication of

16  conflict of interest based on the record before the court.  Plaintiff avers "even before this lawsuit

17  was filed" he worked closely with Ms. Workman and others at her law firm to "answer questions

18  the attorneys had regarding duties and responsibilities of a service technician . . . and the

19  employment policies and practices that applied to a Safe Streets' technician."  Anderson Decl.

20  ¶ 8.  After the lawyers filed this lawsuit, plaintiff continued to work closely with them.  *Id*. ¶ 9.

21  Finally, plaintiff spent "about 150 hours on this case": reading pleadings and filings, working on

22  discovery, preparing for his deposition, participating in arbitration and mediation, reviewing the

23  settlement agreement, and discussing the case with his attorneys.  *Id*. ¶¶ 9–10.  Plaintiff's

24  representation is adequate.

25  As discussed below in addressing the appointment of class counsel, Workman Law Firm,

26  PC also appears to satisfy the adequacy requirement with the ability to represent the interests of

27  the class and no apparent conflicts.

28  /////

1     The plaintiff's proposed class here is thus likely to satisfy the four prerequisites of Rule

2   23(a).

3                   **2.       Rule 23(b):  Type of Proposed Class**

4     Plaintiff seeks certification under Rule 23(b)(3) for settlement purposes only.  A Rule

5   23(b)(3) class may be certified only if (1) "the questions of law or fact common to class members

6   predominate over any questions affecting only individual members" and (2) "a class action is

7   superior to other available methods for fairly and efficiently adjudicating the controversy."

8   Fed. R. Civ. P. 23(b)(3).  "The predominance inquiry asks whether the common, aggregation-

9   enabling, issues in the case are more prevalent or important than the non-common, aggregation-

10  defeating, individual issues." *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016)

11  (citation and internal quotation marks omitted).  "The superiority inquiry . . . requires

12  determination of whether the objectives of the particular class action procedure will be achieved

13  in the particular case," which "necessarily involves a comparative evaluation of alternative

14  mechanisms of dispute resolution." *Hanlon*, 150 F.3d at 1023 (citation omitted).  Rule 23 lists

15  "non-exclusive factors" to consider, as follows:

16          (A)     the class members' interests in individually controlling the prosecution or
17                  defense of separate actions;

18          (B)     the extent and nature of any litigation concerning the controversy already
19                  begun by or against class members;

20          (C)     the desirability or undesirability of concentrating the litigation of the claims
21                  in the particular forum; and

22          (D)     the likely difficulties in managing a class action.

23  Fed. R. Civ. P. 23(b)(3); *Hanlon*, 150 F.3d at 1023.

24     Wage and hour class actions are likely to be certified under this standard when "the major

25  questions in [the] case arise from [the defendant's] alleged failure to properly calculate wages and

26  overtime, account for meal periods and rest periods, and provide reimbursements." *Smothers*,

27  2019 WL 280294, at *7.  This may be true even when some factual questions call for

28  individualized evidence. *See, e.g.*, *Pena v. Taylor Farms Pacific*, 305 F.R.D. 197, 213–22 (E.D.

29  Cal. 2015), *aff'd*, 690 F. App'x 526 (2017), *cert denied*, 138 S. Ct. 976 (2018).  An employer's

uniform policies often predominate when they apply to the entire putative class and when class members have performed the same or similar work.  *See, e.g.*, *Abdullah v. U.S. Sec. Assocs., Inc.*, 731 F.3d 952, 965 (9th Cir. 2013); *Smothers*, 2019 WL 280294, at *7.  The court may not, however, "rely on uniform policies 'to the near exclusion of other relevant factors touching on predominance.'"  *Abdullah v. U.S. Sec. Assocs., Inc.*, 731 F. 3d 952, 965 (9th Cir. 2013) (quoting *In re Wells Fargo Home Mortg. Overtime Pay Litig.*, 571 F. 3d 953, 955 (9th Cir. 2009)).

Here, plaintiff avers common questions of law and fact predominate because, for the time period at issue, all class members were subject to the same policies with respect to rest periods, payment of all hours worked, inaccurate wage statements, lack of written and signed commission plans and lack of reimbursement for all work-related expenses and costs incurred.  Mot. at 26.  All class members had the same employer, Safe Streets, and worked at least 40-hour weeks.  Compl. ¶ 30.  The parties agree all technicians were subject to the same policies and practices.  Mot. at 26 ("For the commonality requirement to be met, there must be only one single issue common to the proposed class." (quoting *Cervantez v. Celestica Corp.*, 253 F.R.D. 562, 570 (C.D. Cal. 2008) (citation omitted))).  It does not appear this case will require extensive fact-intensive inquiry into the circumstances of individual plaintiffs.  The court finds preliminarily the questions common to the class predominate.

Plaintiff maintains this action is the superior method of resolving the controversy because all California class members were subject to the same policies.  Plaintiff argues "[w]here class-wide litigation of common issues will reduce litigation costs and promote greater efficiency, a class action may be superior to other methods of litigation."  *Id*. (quoting *Valentino v. Carter-Wallace, Inc*., 97 F.3d 1227, 1234 (9th Cir. 1996)).  Specifically, "[g]iven there are 137 class members, a class action is the superior method for adjudication of the class members' claims."  Mot. at 30.  The court finds the record at this stage supports a preliminary finding the class action is the superior method for resolving this matter.

In sum, the proposed class appears likely to satisfy Rule 23(b)(3) at this preliminary stage.
/////

1

**B.      Rule 23(e)—Preliminary Certification and Approval**

2          Under Rule 23(e), a class action may be settled "only with the court's approval," and the

3    court may provide such approval "only after a hearing[3] and only on finding that it is fair,

4    reasonable, and adequate . . . ." after considering whether:

5          (A)     the class representatives and class counsel have adequately represented the
6                  class;

7          (B)     the proposal was negotiated at arm's length;

8          (C)     the relief provided for the class is adequate, taking into account:

9                  (i)      the costs, risks, and delay of trial and appeal;

10                 (ii)     the effectiveness of any proposed method of distributing relief to the
11                          class, including the method of processing class-member claims;

12                 (iii)    the terms of any proposed award of attorney's fees, including timing
13                          of payment; and

14                 (iv)     any agreement required to be identified under Rule 23(e)(3); and

15         (D)     the proposal treats class members equitably relative to each other.

16   Fed. R. Civ. P. 23(e)(2).  Ninth Circuit decisions predating this rule list several similar factors for

17   district courts to consider when weighing a proposed settlement agreement:

18   • "the strength of the plaintiffs' case";

19   • "the risk, expense, complexity, and likely duration of further litigation";

20   • "the risk of maintaining class action status throughout the trial";

21   • "the amount offered in settlement";

22   • "the extent of discovery completed and the stage of the proceedings";

23   • "the experience and views of counsel";

24   /////

25   /////

---

[3] The hearing requirement applies to final approval, and the court will observe the requirement at that time.  *See In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 944 (9th Cir. 2015) (explaining hearing requirement applies before final approval).

- "the presence of a governmental participant"; and

- "the reaction of the class members to the proposed settlement."

*In re Volkswagen*, 895 F.3d at 610 n.18 (quoting *Hanlon*, 150 F.3d at 1026); *see also* Fed. R. Civ. P. 23, Advisory Committee's Notes to 2018 Amendment (explaining factors listed in Rule 23(e)(2) not intended to "displace" factors identified in existing judicial decisions).

When, as here, a settlement agreement has been negotiated before a class has been certified, the court must also "undertake an additional search for 'more subtle signs that class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the negotiations.'" *In re Volkswagen*, 895 F.3d at 610–11 (quoting *Bluetooth*, 654 F.3d at 946–47). Three oft-cited "red flags" signaling an unfair settlement include: (1) fees that make up a disproportionately large part of the distribution to the class, (2) "clear sailing" agreements "providing for the payment of attorneys' fees separate and apart from class funds" without defense objection, and (3) agreements that permit unpaid fees to revert to defendants. *Bluetooth*, 654 F.3d at 947 (citations omitted).

Here, many of the applicable factors suggest the proposed settlement is fair, reasonable, and adequate. The class representatives and their counsel must "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Courts consider both whether "(1) [] the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) [] the named plaintiff and their counsel [will] prosecute the action vigorously on behalf of the class[.]" *Hanlon*, 150 F.3d at 1020. "Serious conflicts of interest can impair adequate representation by the named plaintiffs, yet leave absent class members bound to the final judgment, thereby violating due process." *In re Volkswagen 'Clean Diesel' Mktg., Sales Practices, & Prod. Liab. Litig.*, 895 F.3d 597, 607 (9th Cir. 2018). Here, plaintiff avers even before he initiated the action Ms. Workman and others at her firm worked closely with him. Anderson Decl. ¶ 8. Ms. Workman has the qualifications to suggest she can fairly and adequately represent the class: She graduated from Texas Tech School of Law in 1989, after which she clerked for the Honorable Jack Hightower of the Texas Supreme Court. Workman Decl. ¶ 23. She then worked as an associate for the international law firms of Sonnenschein Nath & Rosenthal (currently SNR

Denton) and Russin & Vecchi.  *See id.*  She started her predecessor firm, Qualls & Workman, LLP, in 1996, and her current firm, Workman Law Firm, PC, in 2014.  *Id.*  In his contingency fee agreement with Workman Law Firm, PC, plaintiff agreed to pay attorneys' fees in an amount of 33 percent of the GSA, which is equivalent to $491,700.  *Id.*  ¶ 26.  Although this contingency fee agreement naturally motivates plaintiff to pursue the case vigorously, it also encourages settlement, possibly at the expense of meritorious claims.  As discussed below, however, the settlement is fair and reasonable in light of the controlling law, so this potential conflict is not a bar to the adequacy of plaintiff's representation of the proposed class.  Finally, counsel filed this action in 2018 and her firm engaged in pre-filing investigation and legal research; drafting the complaint and administrative exhaustion letter; responding to defendant's motions, preparation of materials for arbitration and mediation, communicating with plaintiff and other putative class members; reading documents and reviewing data; taking and defending depositions, including those out-of-state; conducting the multi-day arbitration; and drafting and revising settlement.  *Id.* ¶ 28.  Plaintiff's counsel's representation is adequate.

The court has already noted the arm's-length negotiations between the parties and noted above the adequacy of Ms. Workman's representation of plaintiff, given the time she has dedicated to the case and her verified explanation of her role.  The proposed settlement also appears fair, reasonable, and adequate given the parties' understanding of the strength and weaknesses of their positions after engaging in negotiations with an experienced mediator.  *See* Workman Decl. ¶ 14 (describing parties' acceptance of mediator's proposal, reaching settlement).  In order to fully evaluate the reasonableness of the parties' understandings in this respect, the court will direct they file in camera their mediation briefs with a motion for final approval.  Additionally, class members will have 120 days, a reasonable period of time to cash their settlement checks.  Settlement Agreement ¶ 57.

Any uncashed checks will be voided after that time and paid by the Settlement Administrator to the California State Controller's Office for Unclaimed Property in the name of the class member, available for collection through the Controller's established procedures.  *Id.*  No settlement funds will revert to Safe Streets.

Other elements of the proposed settlement agreement, however, weigh against preliminary approval under Rule 23(e).  First, a disproportionate award to counsel is a "subtle sign that class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the negotiations." *Bluetooth*, 654 F. 3d at 947 (citations omitted).  The proposed settlement includes an award of attorneys' fees up to 33 percent of the Gross Settlement Value, and the specific amount proposed at this time is consistent with that percentage.  Mot. at 7; Settlement Agreement ¶ 3.  The benchmark for attorney's fees in the Ninth Circuit is 25 percent.  *See In re Easysaver Rewards Litig.*, 906 F. 3d 747, 754 (9th Cir. 2018).  At the same time, the Circuit has allowed higher percentage fee awards to stand.  *Barbosa v. Cargill Meat Sols. Corp.*, 297 F.R.D. 431, 448 (E.D. Cal. 2013) ("The typical range of acceptable attorneys' fees in the Ninth Circuit is 20 percent to 33.3 percent of the total settlement value, with 25 percent considered a benchmark percentage.") (quoting *Powers v. Eichen,* 229 F.3d 1249, 1256 (9th Cir.2000)).

Courts in this district, like those in other districts as well, have approved fees at 33 percent of the settlement fund for matters involving PAGA claims, *see Rodriguez v. Penske Logistics, LLC*, No. 14-2061, 2019 WL 246652, at *12–*13 (E.D. Cal. Jan. 17, 2019) (approving attorney's fees representing 31.2% of common fund); *Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482 (E.D. Cal. 2010) (approving attorney's fees equaling 33.3% of common fund in settlement of wage-and-hour putative class action).  Such departures from the lower benchmark, however, are possible only if they are properly supported and justified.  *See Powers,* 229 F.3d at 1257.  The record here does not include the necessary support and justification.  Nor has counsel yet provided the court with information to allow a cross-check of the proposed award against the "lodestar" fee.  *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050 (9th Cir. 2002).  Counsel represents the lodestar information will be forthcoming in connection with a motion for final approval. Workman Decl. ¶ 27 ("Prior to final approval, [counsel] will file a motion for attorneys' fees and costs setting forth . . . hours committed to this case, the costs incurred . . . hourly rates and the total lodestar to allow . . . cross-check . . .").  With this information, counsel also must be prepared to justify the amount in fees sought with reference to the case law.

/////

Second, the proposed $10,000 incentive award for the plaintiff as class representative appears to be on the high end of such awards. As described above, a large incentive award sets the named plaintiff apart from the absent class members if the settlement is approved; a plaintiff who stands to receive several thousand dollars extra has an incentive to support agreements that are unfair to absent class members. *See Radcliffe*, 715 F.3d at 1165 ("Instead of being solely concerned about the adequacy of the settlement for the absent class members, the class representatives now had a $5,000 incentive to support the settlement regardless of its fairness . . . ."). For this reason, although the Ninth Circuit has agreed that incentive awards "may be proper," it has "cautioned that awarding them should not become routine practice." *Id.* at 1164. "[I]f class representatives expect routinely to receive special awards in addition to their share of the recovery, they may be tempted to accept suboptimal settlements at the expense of the class members whose interests they are appointed to guard." *Id.* (quoting *Staton v. Boeing Co.*, 327 F.3d at 975). Practically speaking, however, "incentive awards that are intended to compensate class representatives for work undertaken on behalf of a class are fairly typical in class action cases." *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 943 (9th Cir. 2015) (internal quotations omitted). Before final approval, plaintiff must provide information to allow the court's full consideration of whether the proposed incentive fee here is warranted under all the circumstances.

Third, as noted above, the settlement agreement contains a "clear sailing" provision, in which Safe Streets agrees not to challenge a motion for attorneys' fees up to 33 percent or the incentive award to plaintiff of $10,000. Settlement Agreement ¶¶ 61–62. "The very existence of a clear sailing provision increases the likelihood that class counsel will have bargained away something of value to the class." *Bluetooth*, 654 F.3d at 948 (quoting *Weinberger v. Great Northern Nekoosa Corp.*, 925 F.2d 518, 525 (1st Cir. 1991)). In conjunction with the relatively large percentage of the award proposed to pay attorneys' fees, the clear sailing provision merits a higher degree of scrutiny before final approval, given the potential inference of a collusive settlement. In considering any motion for final approval, the court will require a more robust showing that collusion is not an actual concern.

16

1       Despite these concerns, the court remains mindful of the "strong judicial policy favor[ing]

2   settlement of class actions." *Adoma*, 913 F. Supp. 2d at 972 (citing *Class Plaintiffs*, 955 F.2d at

3   1276).  In light of that policy and the positive indicators of overall fairness noted above, the court

4   concludes the settlement agreement is likely to be approved under Rule 23(e)(2) if the concerns it

5   has expressed can be resolved at the final approval stage.  That said, the court offers no assurance

6   that the proposed fee and incentive awards will be approved without the additional information

7   called for by this order.  *See, e.g.*, *Greer v. Dick's Sporting Goods, Inc.*, No. 15-01063, 2019 WL

8   4034478, at *5–7 (E.D. Cal. Aug. 27, 2019) (granting preliminary approval but deferring decision

9   on fees and incentive awards).

10      **C.      Private Attorneys General Act (PAGA)**

11      The court next considers whether the settlement is "'fundamentally fair, reasonable, and

12  adequate' with reference to the public policies underlying the PAGA." *O'Connor*,

13  201 F. Supp. 3d at 1133 (citation omitted).  Where PAGA penalties are compromised for too

14  small a percentage of their total value, a court may not find a settlement meets fundamental

15  fairness requirements.  In *O'Connor*, the plaintiffs and the LWDA agreed the possible value of a

16  PAGA penalty exceeded $1 billion, but the plaintiffs attempted to compromise the claim for only

17  $1 million.  *Id*.  Even accounting for the possibility of reducing such a high verdict as "unjust,

18  arbitrary and oppressive, or confiscatory" as provided in California Labor Code section

19  2699(e)(2), the court in *O'Connor* found no analysis supported settling the PAGA claim for 0.1

20  percent of its estimated value and so rejected the settlement.  *Id*.  Other courts, by contrast, have

21  approved settlements compromising PAGA penalties for single digit percentages of their

22  maximum value, given the circumstances of the particular cases involved.  *See, e.g., Ahmed v.

23  Beverly Health and Rehabilitation Servs., Inc.*, No. 2:16-1747, 2018 WL 746393, at *10 (E. D.

24  Cal. Feb. 6, 2018) (approving 1% of gross settlement as PAGA settlement); *Rodriguez v. RCO

25  Reforesting, Inc.*, No. 2:16-2523, 2019 WL 331159 (E. D. Cal. Jan. 24, 2019) (approving 6% of

26  total settlement as PAGA penalties); *Munoz v. UPS Ground Freight, Inc.*, Civ. No. 07–970,

27  2009 WL 1626376, at *1 (N.D. Cal. June 9, 2009) (approving $60,000 or 2% of total settlement

28  /////

1   as PAGA penalties); *Hopson v. Hanesbrands Inc.*, Civ. No. 08–844 EDL, 2009 WL 928133, at *9

2   (N.D. Cal. Apr. 3, 2009) (approving PAGA settlement of $1,500 or .03%).

3        Here, plaintiff has estimated the maximum value of his PAGA claims as $800,000 or

4   0.54% of the Gross Settlement Amount, $1,490,000.00, based on a total of 3,253 employee pay

5   periods for 137 aggrieved employees during the PAGA period.  Workman Decl. ¶ 12; Settlement

6   Agreement ¶ 3.  The average amount each member will receive is approximately $6,495.00.  This

7   amount is within the range approved by other courts for PAGA claims.  *See In re High-Tech Emp.*

8   *Antitrust Litig.,* No. 11-CV-02509, 2015 WL 5158730, at *18 (N.D. Cal. Sept. 2, 2015) (wage

9   class action settled for $415 million; class members received average $5,770 each).

10        Parties seeking approval of a PAGA settlement must also submit the proposed settlement

11   to the California LWDA for comment at the same time they submit their motion for preliminary

12   approval of the settlement.  *Ramirez v. Benito Valley Farms, LLC*, No. 16-04708, 2017 WL

13   3670794, at *2 (N.D. Cal. Aug. 25, 2017); Cal. Lab. Code § 2699(l)(2) ("The proposed settlement

14   shall be submitted to the agency at the same time that it is submitted to the court.").  The court

15   will require evidence this has been done before final approval.[4]

16        **D.**    **Proposed Class Notice**

17        Federal Rule of Civil Procedure 23(e) requires that prior to settlement of a class action,

18   the court must "direct notice in a reasonable manner to all class members who would be bound by

19   the proposal."  Where a class is certified under Rule 23(b)(3), the notice must meet the

20   requirements of Rule 23(c)(2)(B).  "Adequate notice is critical to court approval of a class

21   settlement under Rule 23(e)."  *Hanlon*, 150 F. 3d at 1025.

22        Notice must be the "best notice . . . practicable under the circumstances" and must provide

23   individual notice "to all members who can be identified through reasonable effort."  Fed. R. Civ.

24   P. 23(c)(2)(B).

25   /////

---

[4] Because this case was filed after July 1, 2016, the parties are required to submit the proposed settlement agreement to the LWDA at the same time it was submitted to the court. *See* 2016 Cal. Legis. Serv. Ch. 31, § 189 (S.B. 836) (West).

The notice must clearly and concisely state in plain, easily understood language:

(i)      the nature of the action;

(ii)     the definition of the class certified;

(iii)    the class claims, issues, or defenses;

(iv)     that a class member may enter an appearance through an attorney if the member so desires;

(v)      that the court will exclude from the class any member who requests exclusion;

(vi)     the time and manner for requesting exclusion; and

(vii)    the binding effect of a class judgment on members under Rule 23(c)(3).

*Id.* "Notice is satisfactory if it 'generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.'" *Churchill Vill., LLC*, 361 F. 3d at 575.

While the notice of class action settlement included with the settlement agreement here generally satisfies Rule 23, the court notes one deficiency that must be remedied before any final approval. On the one hand, the notice adequately explains in plain language the parties to the lawsuit, the claims at issue, and the terms of the settlement. *See* Not. Class Action Settlement at 1–5, Settlement Agreement Ex. A, ECF No. 43-2. It provides instructions on how to object or opt out with deadlines. *Id.* at 3. It informs class members they will be bound by the release of claims if they do not opt out. *Id.* On the other hand, in the section titled "FINAL APPROVAL HEARING ON PROPOSED SETTLEMENT," the notice states, "It is not necessary for you to appear at this hearing unless you have timely filed an objection to the Settlement." *Id.* at 4. This part of the proposed notice to class members must "clarify class members' ability to appear at the final approval hearing with an attorney." *See Stoddart v. Express Servs.*, No. 2:12CV01054, 2021 WL 5761083, at *2 (E.D. Cal. Dec. 3, 2021). Additionally, the proposed notice requires information from employees seeking exclusion from the class, including telephone numbers, addresses, and Social Security numbers. Not. Class Action Settlement at 3. This information exceeds the minimum information requirement of a class member requesting exclusion, which is "(1) the class member's name, (2) a statement that the class member wishes to be excluded from

19

the settlement class . . . , and (3) the class member's signature." *See Haralson*, 383 F. Supp. 3d at 975–76.  The notice also must be remedied to require only the minimum information from these employees, before the notice is distributed.  In seeking final approval, plaintiff must submit the notice form and verify that it was modified as required here.

## IV.    CONCLUSION

For the foregoing reasons, the court **grants preliminary approval of class settlement** but cautions that the deficiencies identified above must be remedied before final approval is appropriate.  Specifically, at the final approval hearing, the parties must be prepared to address:

1.    The reasonableness of the proposed attorney's fees, including in light of a lodestar analysis;

2.    The reasonableness of the incentive award;

3.    The required amendments to the class notice; and

4.    Whether the PAGA requirements are satisfied.

The court preliminarily **approves** the class definition, Settlement Agreement ¶¶ 4–29, and the settlement.

The court **approves** and appoints RG2 Claims Administration, LLC as Settlement Administrator.

The court **approves** and appoints Workman Law Firm, PC to represent the Settlement Class as Class Counsel.

The court **approves** and appoints plaintiff Mark Anderson as Class Representative.

The court preliminarily **approves** the proposed class notice, subject to the changes required in the body of this order**.**

The court orders the following schedule:

Safe Streets shall provide the contact information for the putative class to RG2 Claims Administration **within 20 days** from entry of this order.

RG2 Claims Administration shall mail Notice Packets to putative class **within 40 days** from entry of this order.

/////

20

1           Putative class members **shall have 60 days** from the mailing of notice packets to opt-out.

2           Putative class members shall submit objections, if any, **within 60 days** of the mailing of

3    the notice.

4           Plaintiff's motion for final approval and attorney's fees and costs shall be filed **40 days** in

5    advance of the final approval hearing. The parties shall provide their mediation briefs in camera

6    at the time they file the motion for final approval.

7           The **Final Approval Hearing** is set for March 25, 2022 at 10:00 a.m.

8           This order resolves ECF No. 43.

9           IT IS SO ORDERED.

10   DATED:  January 3, 2022.

11

12            CHIEF UNITED STATES DISTRICT JUDGE