UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Mark Anderson, | No. 2:18-cv-00323-KJM-JDP |
| Plaintiff, | ORDER |
| v. | |
| Safe Streets USA, LLC | |
| Defendant. | |

Rule 23(e) provides "[t]he claims, issues, or defenses of . . . a class proposed to be certified for purposes of settlement [ ] may be settled, voluntarily dismissed, or comprised only with the court's approval." Fed. R. Civ. P. 23(e). "This prescription was designed to function as an additional requirement, not a superseding direction," for settlement class actions. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 621 (1997). Even when a settlement appears fair, the court cannot approve the settlement if it violates the Federal Rules or modifies people's rights. *See id*. at 620–21. Otherwise, the court might modify substantive rights of the putative class in violation

1

of the Rules Enabling Act, 28 U.S.C. § 2072,[1] or might extend its jurisdiction in violation of Rule 82.[2] *See id.* at 612–13.

Plaintiff Mark Anderson renews his unopposed motion for final approval of the parties' settlement and for attorneys' fees. As explained below, the court **denies** the motion: (1) Anderson's collective and class claims are moot, and the court lacks jurisdiction to approve the parties' settlement of those claims; and (2) several deficiencies in the settlement preclude the court's approval.

I.  BACKGROUND

Safe Streets is in the business of selling and installing security systems. Compl. ¶ 28, ECF No. 1. Anderson worked as an installation technician for Safe Streets between October 2014 and December 2016. *Id.* ¶ 6. He brought this wage-and-hour lawsuit on behalf of installation technicians against defendant Safe Streets, alleging it did not compensate them for overtime pay, double time or wage equipment reimbursements, among other things. *See generally id.* Anderson's complaint was styled as a collective action under the Fair Labor Standards Act (FLSA), putative class action under Rule 23, and representative action under the California Private Attorneys General Act (PAGA). *See id.*

In March 2018, Safe Streets moved to compel arbitration, asserting Anderson had signed an arbitration agreement, in which he waived his right to bring a collective or class action.[3] Mot.

---

[1] "[Rules of procedure] shall not abridge, enlarge or modify any substantive right." 28 U.S.C. § 2072(b).

[2] "[Federal Rules of Civil Procedure] do not extend or limit the jurisdiction of the district courts or the venue of actions in those courts." Fed. R. Civ. P. 82.

[3] The parties' arbitration agreement included the following language:

**WAIVER.  TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW, YOU AND SAFE STREETS AGREE THAT NO COVERED CLAIMS MAY BE INITIATED, MAINTAINED, HEARD OR DETERMINED ON A CLASS, COLLECTIVE, OR REPRESENTATIVE ACTION BASIS EITHER IN COURT OR IN ARBITRATION, AND THAT YOU ARE NOT ENTITLED TO SERVE OR PARTICIPATE AS A CLASS, COLLECTIVE OR REPRESENTATIONAL ACTION MEMBER OR**

1  Compel. Arb. at 1–2, ECF No. 6.  It also requested to stay Anderson's PAGA claim under the
2  then-controlling precedent, which held PAGA claims are not subject to arbitration.  *See id*. at 1
3  n.1 (citing *Iskanian v. CLS Transp. Los Angeles*, 59 Cal. 4th 348 (2014), *abrogated by Viking*
4  *River Cruises, Inc. v. Moriana*, 142 S.Ct. 1906 (2022)).  Finding Safe Streets' arguments
5  persuasive, the court compelled Anderson to arbitrate his claims on an individual basis and stayed
6  his PAGA claim until the arbitration's completion.  *See* Order (Aug. 29, 2018), ECF No. 19.  The
7  arbitrator awarded Anderson $8,915 in damages for his individual claims, as well as $78,243.60
8  in attorneys' fees and $17,189.36 in costs.  *See* Workman Decl. Renewed Final Approval Ex. A
9  (Arb.'s Award) at 4, ECF No. 56-4.  As confirmed at hearing on the pending motion in this case,
10 Safe Streets also paid $24,910 in arbitration fees and expenses.  Hr'g Tr. at 4:25–5:2, ECF
11 No. 62; *see also* Arb.'s Award at 5.
12     After the arbitration, the parties represented to the court that "[t]his case now consists of a
13 single cause of action under [PAGA]," and they proposed a discovery schedule for only the
14 PAGA claim.  J. Status Rep. (JSR) at 1, 3–4, ECF No. 30.  They also represented the complaint's
15 class allegations are "no longer relevant to this matter." *Id.* at 2.  Safe Streets' answer, filed after
16 the arbitration, corroborated these representations, as it stated "this case cannot be maintained as a
17 collective or class action pursuant to a prior order of the Court (Dkt. No. 19)[.]"  Answer ¶ 9,
18 ECF No. 32.  Anderson's request to set a trial date for his "single cause of action under [PAGA]"
19 was consistent with Safe Streets' representations.  Mem. Mot. Set Trial Date at 2, ECF No. 37-1.
20 Based on these representations and the court's previous order, the court understood Anderson's
21 sole remaining claim to be his PAGA claim.
22     Over a year after the arbitration, the parties settled in mediation, and Anderson sought
23 preliminary approval of their agreement.  *See* Mot. Prelim. Approval, ECF No. 43.  The
24 settlement provides a total settlement amount of $1,490,000, of which $890,000 is allocated to

---

**RECEIVE ANY RECOVERY FROM A CLASS, COLLECTIVE, OR REPRESENTATIVE ACTION INVOLVING COVERED CLAIMS EITHER IN COURT OR IN ARBITRATION.**

Morgan Decl. Ex. 1 (Arb. Agreement) at 2, ECF No. 6-3 (emphasis in original).

Anderson's "class claims," $491,700 to attorneys' fees, $25,000 to litigation costs, $10,000 to Anderson's incentive award, up to $12,000 for the settlement administrator fee, and at least $61,300 to Anderson's PAGA claim. Mem. Prelim. Approval at 14–15, ECF No. 43-1; Mem. Renewed Final Approval at 9, ECF No. 56-3. No amount is allocated toward a FLSA collective. *See* Mem. Prelim. Approval at 14–15. The total settlement amount reflects approximately 48 percent of the total estimated value of Anderson's PAGA and class claims; Anderson's expert valued Anderson's PAGA claim at $1,209,850 and his class claims at $1,287,454, for a sum of $2,497,304. Workman Decl. Prelim. Approval ¶ 12, ECF No. 43-2; Mem. Renewed Final Approval at 8–9. "The class period for the [s]ettlement ends in March of 2021, because, on this date [d]efendant issued new policies that addressed the practices at issue in this action." Mem. Prelim. Approval at 13.

The court preliminarily approved the settlement with the understanding it resolved only the PAGA claim.[4] *See* Order (Jan. 4, 2022) at 3. Anderson then sought final approval, but he did not address whether Anderson's sole remaining claim is under PAGA. *See* Mem. Final Approval, ECF No. 49-1. The court thus denied the final approval because (1) the settlement improperly divided the available fund between PAGA and class claims, although Anderson's only remaining claim was under PAGA, and (2) the settlement did not distribute 75 percent of the civil penalties to the California Labor & Workforce Development Agency (LWDA), as required under PAGA. Order (Aug. 3, 2022) at 3–4, ECF No. 55.

As noted, Anderson renews his unopposed motion for the settlement's final approval and for attorneys' fees. *See* Am. Renewed Mot. Final Approval, ECF No. 57. The parties have not changed any terms of the settlement. *See* Mem. Renewed Final Approval at 7. Instead, Anderson asks the court to reconsider its earlier denial because "[r]ather than resolving just a single PAGA claim, the Settlement also resolves *all of the class claims* brought on behalf of the absent class members." *Id*. (emphasis in original). After reviewing Anderson's brief and the proposed

---

[4] The court acknowledges in retrospect it discussed Rule 23(a) and (b) unnecessarily. *See* Order (Jan. 4, 2022) at 6–11, ECF No. 45; *Sakkab v. Luxottica Retail N. Am., Inc.*, 803 F.3d 425, 436 (9th Cir. 2015) ("[U]nlike Rule 23(a), PAGA contains no requirements of numerosity, commonality, or typicality.").

4

settlement agreement, the court directed the parties to be prepared to discuss at hearing: (1) why Anderson's collective claim is not moot under *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66 (2013), and (2) why Safe Streets is not judicially estopped from settling Anderson's collective and class claims after arguing successfully that Anderson had waived his right to assert such claims. Min. Order, ECF No. 58. Anderson then filed a supplemental brief without leave of court, contrary to this court's standing orders. *See* Standing Order at 3, ECF No. 3-1; Response, ECF No. 60.[5] The supplemental brief acknowledged for the first time that the proposed settlement agreement would also resolve his FLSA collective claim. *See* Response at 8.

The court held the hearing on November 4, 2022. Mins. Final Approval Hr'g, ECF No. 61. Robin Workman appeared for Anderson. Thomas Hill appeared for Safe Streets. As Anderson's counsel, Ms. Workman confirmed the settlement will resolve his FLSA collective claim in addition to his class claims and PAGA claim, Hr'g Tr. at 3:2–5, thus contradicting his and Safe Streets' previous assertions that only the PAGA claim remained, and despite Anderson's failure to acknowledge the FLSA claim until his supplemental brief. Based on the parties' arguments at the hearing and after reviewing the proposed settlement agreement once more, the court finds the proposed agreement would in fact resolve Anderson's collective claim under the FLSA, as well as his claims on behalf of a proposed class, and his PAGA claim. *See* Workman Decl. Prelim. Approval Ex. 2 (Settlement Agreement) ¶¶ 51–52, ECF No. 43-2; *id*. ¶ 67 ("Notwithstanding the foregoing, the Released Claims do not include any individual claims under Section 16(b) of the Fair Labor Standards Act, 29 U.S.C. sec. 216(b), as to a Class Member who does not opt-in to the Settlement by cashing, depositing, or endorsing his or her Settlement Payment check, to the extent that opting-in is required to waive such FLSA claims.").[6]

---

[5] The court has reviewed this brief because doing so will not cause unfair prejudice to any party. The court of course reserves its right to disregard or strike any supplemental brief filed without prior leave of court.

[6] The court therefore also erred when it stated in its previous order that the collective claim is not relevant to the approval motion. *See* Order (Jan. 4, 2022) at 2.

1    Having considered the parties' arguments, the court **denies** the motion for the following
2    reasons.

## II.    MOOTNESS

Mootness is a question of subject matter jurisdiction. *Liner v. Jafco, Inc.*, 375 U.S. 301, 306 n.3 (1964). The court must raise any mootness issues sua sponte. *Bernhardt v. County of Los Angeles*, 279 F.3d 862, 871 (9th Cir. 2002). "[A]n actual controversy must be extant at all stages of review, not merely at the time the complaint is filed." *Arizonans for Off. English v. Arizona*, 520 U.S. 43, 67 (1997).

As summarized above, Anderson seeks approval of his agreement to settle collective, class, and PAGA claims. Hybrid actions such as these "must—like any stand-alone FLSA case or stand-alone class suit—meet the collective action requirements to proceed as an FLSA case and the class action requirements to proceed as a class suit." William B. Rubenstein, 7 Newberg & Rubenstein on Class Actions § 23:40 (6th ed.); *see also Borelli v. Black Diamond Aggregates, Inc.*, 2021 WL 5319610, at *3–8 (E.D. Cal. Nov. 4, 2021) (considering Rule 23, FLSA, and PAGA requirements separately in a hybrid action). The court thus considers Anderson's claims separately. The parties agree, as does this court, that the PAGA claim is not moot. That claim was not arbitrated. The court need therefore consider only whether the collective and class claims are moot.

### A.    Mooted Collective Claim

A collective action must be dismissed as moot if a plaintiff's individual claim is satisfied. *See Genesis Healthcare*, 569 U.S. 66 at 73 ("[T]he mere presence of collective-action allegations in the complaint cannot save the suit from mootness once the individual claim is satisfied."). At hearing, Anderson's counsel admitted the arbitrator's award resolved his individual FLSA claim Hr'g Tr. at 3:25–4:14. His collective claim is thus moot under *Genesis Healthcare*. *See* 569 U.S. at 73. The court must dismiss Anderson's mooted collective claim and deny his motion to approve the settlement of that claim. *See id.*; *cf. Jeff D. v. Andrus*, 899 F.2d 753, 758 (9th Cir. 1989) ("[C]ourts are not permitted to modify settlement terms or in any manner to rewrite agreements reached by parties").

6

Anderson argues incorrectly that *Genesis Healthcare* no longer applies. *See* Response at 6–15 (citing *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 156 (2016) and *Chen v. Allstate Ins. Co.*, 819 F.3d 1136, 1138 (9th Cir. 2016)). *Campbell-Ewald* and *Chen* answer a question the Court left unanswered in *Genesis Healthcare*: whether "an unaccepted settlement offer has no force." *See, e.g.*, *Campbell-Ewald*, 577 U.S. at 156. These cases did not abrogate the Court's central holding in *Genesis Healthcare*: this court must dismiss collective claims as moot if the plaintiff's individual claim has been satisfied. *See Chen*, 819 F.3d at 1147 (acknowledging *Genesis Healthcare* still applies "narrowly in the FLSA collective action context" after the *Campbell-Ewald* decision); *see also* William B. Rubenstein, 7 Newberg & Rubenstein on Class Actions § 23:43 (6th ed.) ("Although *Genesis Healthcare* assumed that the named plaintiff's claim became moot upon an offer of full judgment and that assumption is no longer warranted, the heart of *Genesis Healthcare* is the Court's decision that once a named plaintiff's claim is moot before conditional certification, the collective action is moot as well and must be dismissed. That holding of course remains good law.").

Under *Genesis Healthcare*, Anderson cannot rely on mootness exceptions unique to Rule 23 class actions to reanimate his collective claim. *See* 569 U.S. at 73 (holding class action mootness exceptions do not apply in context of FLSA collective action "because Rule 23 actions are fundamentally different from collective actions under the FLSA"). Unlike a class action, a FLSA collective action "does not produce a class with an independent legal status, or join additional parties to the action. The sole consequence of conditional certification is the sending of court-approved written notice to employees." *Id.* at 75. At hearing, Anderson suggested previous Ninth Circuit and Supreme Court decisions have applied class action mootness exceptions to FLSA claims as well. Hr'g Tr. 12:3–12 (citing *Pitts v. Terrible Herbst, Inc.*, 653 F.3d 1081 (9th Cir. 2011); *Narouz v. Charter Commc'n, LLC,* 591 F.3d 1261 (9th Cir. 2010)); *U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 398 (1980)). Anderson misunderstands the factual bases of those cases. In none were the FLSA claims relevant on appeal. *See, e.g.*, *Pitts*, 653 F.3d at 1093 ("[the plaintiff] has told [the Ninth Circuit]—as he told the district court—that he will not pursue his FLSA Claims."). In any event, even if these decisions supported his

7

position, *Genesis Healthcare* would control as the more recent decision of a higher court, *Agostini v. Felton*, 521 U.S. 203, 235 (1997), and as discussed in the next section, none of the mootness exceptions identified in *Genesis Healthcare* is available to Anderson. His FLSA claim is moot, and his collective action claims must be dismissed.

      **B.**    **Mooted Class Claims**

"A suit brought as a class action must as a general rule be dismissed for mootness when the personal claims of all named plaintiffs are satisfied and no class has been properly certified." *Employer-Teamsters Loc. Nos. 175 & 505 Pension Tr. Fund v. Anchor Cap. Advisors*, 498 F.3d 920, 924 (9th Cir. 2007) (quoting *Zeidman v. J. Ray McDermott & Co., Inc.*, 651 F.2d 1030, 1045 (5th Cir. 1981)). "In these situations there is no longer a 'case or controversy' to be decided within the meaning of Article III of the Constitution." *Id.*

As another district court has observed, "[a]s a matter of federal procedure, courts granting a motion to compel individual arbitration simultaneously render the individual's class claims moot." *Edwards v. Chartwell Staffing Servs., Inc.*, 2017 WL 10574360, at *7 (C.D. Cal. May 30, 2017). This is especially true when a plaintiff has resolved his individual claims in arbitration. *See Douglas v. U.S. Dist. Ct. for Cent. Dist. of Cal.*, 495 F.3d 1062, 1069 (9th Cir. 2007) ("If [the plaintiff]'s individual claim is rendered moot because it is fully satisfied as a result of the arbitration, he would lose his status as class representative because he would no longer have a concrete stake in the controversy."). The parties appeared to have understood this rule, as they previously agreed this court's arbitration order rendered Anderson's class claims irrelevant in this case. *See* JSR at 2. At hearing now, Anderson could not provide any authority to the contrary. Hr'g Tr. at 13:22–14:8.

Moreover, none of the class action exceptions to mootness applies here. The Ninth Circuit has recognized four circumstances when class claims are not moot even if an individual plaintiff's claims are: (1) when the district court has already certified a class; (2) when the district court has denied class certification and the named plaintiff pursues an appeal of the certification issue; (3) when the named plaintiff has filed a motion for class certification and the motion is pending before the district court; and (4) when the named plaintiff has refused a defendant's offer

to satisfy the plaintiff's claim. *Pitts*, 653 F.3d at 1090–92. This case does not fit any of these categories. Anderson arbitrated his individual claims before he filed a motion for class certification. *See* Mem. Renewed Final Approval at 7. Although Anderson argues he "did not voluntarily submit his claims to arbitration," Response at 8, the court previously found he had in fact agreed to arbitrate as part of his retention bonus agreement, which employees like Anderson could have refused to sign*, see* Order (Aug. 29, 2018) at 12, 16 ("If Anderson 'wanted to retain [his right to bring a class action], nothing stopped [him] from opting out of the arbitration agreement.'") (quoting *Johnmohammadi v. Bloomingdale's Inc.*, 755 F.3d 1072, 1075–76 (9th Cir. 2014)); Arb. Agreement at 1 ("While Safe Streets hopes that you accept the retention bonus under the terms set forth herein, you should be aware that this is your individual choice and your decision to accept or not accept the retention bonus and terms of this [agreement] will have no [effect] on your employment status with Safe Streets"). Anderson may not relitigate this point. In any event, Anderson has not shown that a court-ordered arbitration is akin to refusing a defendant's offer of judgment, *see* Response, especially when the arbitrator's award for Anderson's individual claims has been effected, Order (Jan. 4, 2022) at 3. As noted, other courts have found arbitration of individual claims to moot class claims. *E.g., Douglas*, 495 F.3d at 1069; *Edwards*, 2017 WL 10574360, at *7.

Anderson also argues his settlement interests in the incentive award and additional attorneys' fees are sufficient to avoid mootness, relying on the Ninth Circuit's decision in *Narouz*. Mem. Renewed Final Approval at 8, 13–16 (citing 591 F.3d at 1265). In *Narouz*, the Ninth Circuit held that a plaintiff's class claims were not moot even though the proposed settlement agreement had mooted his individual claims. *See* 591 F.3d at 1264–65. He had retained the necessary "personal stake" in the litigation because he would be entitled to a $20,000 incentive award if the district court approved the settlement agreement. *See id.* at 1265. The Ninth Circuit later explained that its decision in *Narouz* came down to this concrete "financial stake" in the outcome:

> "[W]hen a class representative voluntarily settles his individual
> claims, he must do more than expressly leave class claims unresolved

9

> to avoid mootness. A class representative must also retain—as evidenced by an agreement—a financial stake in the outcome of the class claims. Absent such a stake, a class representative's voluntary settlement of individual claims renders class claims moot."

*Brady v. AutoZone Stores, Inc.*, 960 F.3d 1172, 1175 (9th Cir. 2020). The mere possibility of an incentive award or additional attorneys' fees is insufficient. *Id.*

*Narouz* is inapplicable for several reasons. First, in *Narouz*, the district court had denied class certification, and the named plaintiff was pursuing an appeal of that order, *see* 591 F.3d at 1263–65, so the case fell squarely within a recognized class action exception to mootness, *see Pitts*, 653 F.3d at 1090. When the named plaintiff's individual claims become moot during such an appeal, "the claim on the merits is 'capable of repetition, yet evading review,' [and] the named plaintiff may litigate the class certification issue despite loss of his personal stake in the outcome of the litigation." *Geraghty*, 445 U.S. at 398. Here, as noted, Anderson did not move to certify a class before his individual claims became moot. Nor has he explained how post-arbitration litigation is similar to an appeal of a certification decision, *see* Mem. Renewed Final Approval, and the court is not aware of any authority reaching such a conclusion.

Second, under the arbitrator's award, Anderson was not entitled to any incentive awards or additional attorneys' fees for pursuing his class claims, so Anderson's class claims have become moot. *See* Arb.'s Award; *Brady*, 960 F.3d at 1175 (stating class representative must do more than leave class claims unresolved in settlement agreement to avoid mootness). The prospect of an incentive award or additional attorneys' fees materialized more than a year after the arbitration award issued, when the parties agreed to settle the mooted class claims. *Compare* Final J. Status Rep. at 2, ECF No. 28 (completing arbitration in May 2020) *with* Mem. Prelim. Approval at 14 (reaching settlement in August 2021). Thus, unlike in *Narouz*, the question here is not whether Anderson "retain[ed] a continued financial interest in the advancement of the class claims." 591 F.3d at 1265. Rather, the question is whether Anderson may resurrect his mooted class claims by later agreeing to a class settlement, which then provided him with a financial interest in the class. The answer has to be "no." To prevent a claim from becoming moot, the live controversy "must be extant at all stages of review." *Arizonans*, 520 U.S. at 67. At the

10

moment the arbitrator's award mooted Anderson's class claims, there was no more live class controversy. *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477–78 (1990).

Third, in some cases, plaintiffs have argued that defendants have used mootness arguments strategically, in order to "pick off" the named plaintiff "to avoid a class action." *Pitts*, 653 F.3d at 1091. Anderson cannot rely on that argument. The danger here is not a defendant's gamesmanship at the expense of the plaintiff and proposed class, but rather defendants who strategically pick a partner for settlement negotiations. *Cf. Gruinn v. Int'l House of Pancakes*, 513 F.2d 114, 123 (8th Cir. 1975) ("Under Rule 23(e), the district court acts as a fiduciary who must serve as a guardian of the rights of absent class members."). In this situation, enforcing the Constitution's mootness requirements protects absent class members from the danger of collusion between an employer and an employee whose only stake in the controversy is an incentive to settle.

Anderson does argue his individual claims are not moot because he has not obtained the injunctive relief sought in his complaint. *See* Response at 7 (citing *Luman v. NAC Marketing Co., LLC*, 2017 WL 3394117 (E.D. Cal. Aug. 8, 2017)). In other filings, however, he has taken the opposite position. *See* Mem. Renewed Final Approval at 10 ("In addition to the monetary compensation Defendant will pay, Defendant also made changes to its policies to address the practices at issue."); Mem. Prelim. Approval at 13 ("The class period for the Settlement ends in March of 2021, because, on this date Defendant issued new policies that addressed the practices at issue in this action."). Moreover, to the extent there remain any policies that continue to violate labor laws, Anderson, as a former employee, does not have standing to pursue an injunction against the company's policies. *Walsh v. Nev. Dep't of Human Res.*, 471 F.3d 1033, 1037 (9th Cir. 2006).

For the reasons above, the court finds Anderson's collective and class claims are moot, dismisses those claims, and denies the motion for final approval as presented to the court.

### III.   FURTHER PROCEEDINGS

Although the court denies Anderson's motion for final approval, the court does not rule out the possible intervention by other members of the putative collective or class. *Kennerly v.*

11

1  *United States*, 721 F.2d 1252, 1260 (9th Cir. 1983) (remanding to "district court for consideration of possible intervention by other members of the putative class" when named plaintiff was "not in a position to seek class action certification as a class representative"). Anderson may also pursue his remaining PAGA claim. But any renewed motion to approve a settlement agreement—either with a new plaintiff or for Anderson's remaining PAGA claim—must address the deficiencies noted below.

### A.    FLSA Claims

Reviewing the substance of the parties' agreement, five shortcomings also prevent the court from approving the parties' agreement to settle FLSA claims.

First, Anderson neither specifies what FLSA claims are subject to the release nor discusses the value of these claims. *See* Mem. Preliminary Approval; Mem. Final Approval; Mem. Renewed Final Approval. "[C]ourts that have approved settlements releasing both FLSA and Rule 23 claims generally do so only when the parties expressly allocate settlement payments to FLSA claims." *Thompson v. Costco Wholesale Corp.*, 2017 WL 697895, at *8 (S.D. Cal. Feb. 22, 2017) (collecting authorities). With none of the settlement payments allocated toward the FLSA collective action, the only reasonable inference the court can draw is that the settlement assigns the FLSA claims no value. *Contra* Hr'g Tr. at 19:8–24 (arguing settlement provides recovery for class members' FLSA claims because those claims are "based on the same underlying factual analysis as the California claims[.]"). A settlement calling "for a release of the FLSA claim in exchange for no consideration does not appear to be a 'fair and reasonable resolution of a bona fide dispute over FLSA provisions.'" *Maciel v. Bar 20 Dairy, LLC*, 2018 WL 5291969, at *6 (E.D. Cal. Oct. 23, 2018) (citing 29 U.S.C. § 216(b)). District courts in the Ninth Circuit, including this court, have concluded that between 70 percent and 100 percent of a plaintiff's FLSA damages constitutes a reasonable settlement.[7] *See Alcazar v. OEI Holdings,*

---

[7] The current settlement provides only an insufficiently low 48 percent of the total estimated damages for Anderson's PAGA and class claims. *See* Mem. Renewed Final Approval at 16 (representing total estimated value of all claims to be $2,497,304 when total value of settlement is $1,209,850).

12

*LLC*, 2022 WL 3358090, at *3 (E.D. Cal. Aug. 15, 2022); *Slavkov v. Fast Water Heater Partners I, LP*, 2017 WL 3834873, at *1 (N.D. Cal. Jul. 25, 2017) (collecting cases).

Second, Anderson has not shown this court has authority to approve a settlement that releases FLSA claims without first certifying a collective action. Rule 23 class actions are of course "fundamentally different from collective actions under the FLSA." *Thompson*, 2017 WL 697895, at *3. Some courts have rejected settlements in hybrid actions that attempt to skip collective action certification. *See, e.g., id*. at *7 (finding lack of collective certification problematic where the settlement specifies that class members will release their FLSA claims); *but cf. Seto v. County of San Joaquin*, 2022 WL 3357504, at * 1 (E.D. Cal. Aug. 14, 2022) (certifying FLSA collective sua sponte when approving settlement resolving only FLSA claims). This court agrees that collective certification is a required first step for a collective settlement in a hybrid action.

Third, Anderson has not shown the parties' collective settlement is a "fair and reasonable resolution of a bona fide dispute over FLSA provisions." *Dahl v. Bay Power Inc.*, 2021 WL 2313388, at *1 (N.D. Cal. May 28, 2021) (citing *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1355 (11th Cir. 1982)). When there is certainty that the FLSA entitles potential collective members to the compensation they would seek, a court will not approve a settlement, because it would shield employers from the full cost of complying with the statute. *Selk v. Pioneers Mem'l Healthcare Dist.*, 159 F. Supp. 3d 1164, 1172 (S.D. Cal. 2016).

Fourth, under the current settlement agreement, class members opt into the collective action and release their FLSA claims when they cash, deposit or endorse their settlement check. Settlement Agreement ¶ 67. Such an opt-in procedure is prohibited under the FLSA. *Smothers v. NorthStar Alarm Servs., LLC*, 2019 WL 280294, at *10 (E.D. Cal. Jan. 22, 2019). The statute expressly provides that "[n]o employee shall be a party plaintiff to any [collective] action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought." 29 U.S.C. § 216(b). Any settlement cannot provide a class member's release of FLSA claims unless he or she opts in by filing a written consent with the court. *Smothers*, 2019 WL 280294, at *10.

Finally, the parties must "provide potential plaintiffs 'accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether or not to participate.'" *Adams v. Inter–Con Sec. Sys.*, 242 F.R.D. 530, 539 (N.D. Cal. 2007) (quoting *Hoffmann–La Roche v. Sperling*, 493 U.S. 165, 170 (1989)). "[C]ourts considering approval of settlements in [ ] hybrid [Rule 23 and FLSA] actions consistently require class notice forms to explain: '(1) the hybrid nature of th[e] action; [ ] (2) the claims involved in th[e] action; (3) the options that are available to [ ] Class members in connection with the settlement, including how to participate or not participate in the Rule 23 class action and the FLSA collection action aspects of the settlement; and (4) the consequences of opting-in to the FLSA collective action, opting-out of the Rule 23 class action, or doing nothing.'" *Thompson*, 2017 WL 697895, at *8 (quoting *Pierce v. Rosetta Stone, Ltd.*, 2013 WL 1878918, at *4 (N.D. Cal. May 3, 2013)).

### B. PAGA Claims

As noted in the court's previous order, the settlement agreement does not distribute 75 percent of the civil penalties to the LWDA, as expressly required under PAGA. *See* Cal. Lab. Code § 2699(i). [8] While a court has discretion to assess a total amount of civil penalties under PAGA, it is subject to the limitations and conditions enumerated in the statute. Cal. Lab. Code § 2699(e)(1).[9] The only exception to the 75 percent mandate requires 100 percent of the civil penalties to be paid to the LWDA when the defendant did not have any employees at the time it violated PAGA. *Id.* §§ 2699(f)(1), (i), (j). PAGA does not provide an exception for when the settlement overall appears fair. *Contra* Mem. Renewed Final Approval at 16–21 (citing, for

---

[8] "Except as provided in subdivision (j), civil penalties recovered by aggrieved employees *shall be distributed* as follows: *75 percent to the Labor and Workforce Development Agency* for enforcement of labor laws, including the administration of this part, and for education of employers and employees about their rights and responsibilities under this code, to be continuously appropriated to supplement and not supplant the funding to the agency for those purposes; and 25 percent to the aggrieved employees." Cal. Lab. Code § 2699(i) (emphases added).

[9] "For purposes of this part, whenever the Labor and Workforce Development Agency, or any of its departments, divisions, commissions, boards, agencies, or employees, has discretion to assess a civil penalty, a court is authorized to exercise the same discretion, subject to the same limitations and conditions, to assess a civil penalty." Cal. Lab. Code § 2699(e)(1).

example, *Viceral v. Mistras Grp.., Inc*., 2016 WL 5907869, at *2 (N.D. Cal. Oct. 11, 2016)). Nor does PAGA provide an exception for when the LWDA does not object to a settlement. *Contra id.* at 16–17 (citing, as an example, *Echavez v. Abercrombie & Fitch Co., Inc*., 2017 WL 3669607, at *3 (C.D. Cal. Mar. 23, 2017)).

Here, the parties' PAGA settlement provides $200,000 for the class members and only $61,300 for the LWDA, Mem. Renewed Final Approval at 18, and does not comply with the PAGA's allocation requirement, Cal. Lab. Code § 2699(i). Anderson cites other district courts' approval decisions in similar cases. *See* Mem. Renewed Final Approval at 16–21. These decisions are not binding. *See In re Van Wagoner Funds, Inc. Sec. Litig*., 382 F. Supp. 2d 1173, 1182 (N.D. Cal. 2004). Nor are they persuasive. These courts did not justify their decision to depart from the Labor Code's clear requirements.

### C. Attorneys' Fees and Costs

Anderson seeks attorneys' fees based on a total of 916.35 hours worked. *See* Mem. Renewed Fees Approval at 21, ECF No. 56-2. But the arbitrator considered some of these hours in his award of attorneys' fees. *See id.* at 24 (representing lodestar hours include participation in multi-day arbitration of Anderson's individual claims); *see also* Workman Decl. Renewed Final Approval Ex. I (Invoice); Arb.'s Award at 4 (awarding $78,243.60 in attorneys' fees for Anderson). The Federal Arbitration Act does not authorize a court to go "beyond confirming an arbitrator's award and independently award additional attorneys' fees." *Ridgeway v. Nabors Completion & Prod. Servs. Co*., 2021 WL 3184226, at *2 (C.D. Cal. June 25, 2021). Therefore, for lodestar purposes, Anderson must exclude any hours the arbitrator already has considered and addressed.

Similarly, Anderson may not recover costs here if they were already reimbursed by the arbitrator. Anderson for example, seeks to recover "travel expenses incurred to attend depositions and *arbitration*." Mem. Renewed Fee Approval at 26 (emphasis added); *see also* Invoice. The arbitrator already considered Anderson's travel expenses for arbitration, among other costs, and awarded $17,189.36 in costs. Arb.'s Award at 4. For any future reimbursement requests,

Anderson must exclude any costs the arbitrator has considered. *Ridgeway*, 2021 WL 3184226, at *2.

Among Anderson's litigation costs, he may not recover $12,478.75 in expert fees. *See* Mem. Renewed Fees Approval at 26. The court must apply federal law to determine whether a plaintiff may recover expert fees as costs. *See Aceves v. Allstate Ins. Co.*, 68 F.3d 1160, 1167-68 (9th Cir. 1995) (citing *Hanna v. Plumer*, 380 U.S. 460, 463 (1965); finding district court erred in applying California law because "reimbursement of expert witness fees is an issue of trial procedure" and "federal law controls the procedure by which the district court oversaw the litigation"). Under the applicable federal law, Anderson is entitled to compensation only for "court appointed experts." *See* 28 U.S.C. § 1920; *Seebach v. BMW of N. Am., LLC*, 2021 WL 516712, at *1 (E.D. Cal. Feb. 11, 2021). Because Anderson's expert witness was not appointed by the court, Anderson may not recover the expert fees. Moreover, the arbitrator found expert fees to be non-compensable. Arb.'s Award at 4. If Anderson is now seeking to recover the expert fees rejected by the arbitrator, as noted, he is unable to do so under the Federal Arbitration Act. *Ridgeway*, 2021 WL 3184226, at *2.

**IV. CONCLUSION**

For the reasons above, the court **denies** plaintiff's renewed motion for final approval of settlement and for attorneys' fees. Absent the filing of a renewed motion, the parties shall file a joint status report **within 45 days** of this order's filed date. A status conference is scheduled for **February 23, 2023.**

This order resolves ECF Nos. 56 and 57.

IT IS SO ORDERED.

DATED: December 20, 2022.

_____
CHIEF UNITED STATES DISTRICT JUDGE