UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Mark Anderson, | No. 2:18-cv-00323-KJM-JDP |
| Plaintiff, | ORDER |
| v. | |
| Safe Streets USA, LLC, | |
| Defendant. | |

Plaintiff Mark Anderson moves for final approval of the parties' settlement agreement and for attorneys' fees, litigation costs, settlement administration costs and enhancement awards to plaintiff. The motion is unopposed. As explained below, the court **grants** the motion to the extent set forth here.

**I.    BACKGROUND**

The court incorporates by reference the background of this case from its previous order. *See generally* Order (Dec. 20, 2022), ECF No. 65. Anderson filed this action against Safe Streets, alleging violations of the California Labor Code on behalf of himself and similarly situated employees. Compl., ECF No. 1. Safe Streets subsequently filed a motion to compel arbitration, *see* Mot. Compel Arb., ECF No. 6, which the court granted, *see* Order (Aug. 29, 2018), ECF No. 19, staying all representative claims, including those under the California Private Attorneys General Act ("PAGA"). The arbitrator found Safe Streets failed to reimburse Anderson for work-

1   related expenses, did not pay for all non-productive time and did not provide accurate wage
2   statements. *See* Settlement Mem. at 9–10, ECF No. 93-1.

3         The court denied Anderson's previous motion for final approval of settlement for failure
4   to allocate 75 percent of civil penalties to the Labor and Workforce Development Agency, failure
5   to consider the amounts already awarded in arbitration and inclusion of impermissible expert fees
6   in the litigation cost award. *See generally* Order (Dec. 20, 2022). Anderson renewed his motion
7   for final approval of the settlement agreement. *See* Settlement Mot., ECF No. 93. The court
8   ordered the parties to submit a status report to determine whether recent amendments to PAGA
9   applied to this proposed settlement. *See* Min. Order, ECF No. 96. The parties submitted their
10  report, with which the court agrees, saying that the alterations to PAGA only apply to actions
11  filed on or after June 19, 2024. *See* Joint Status Rep., ECF No. 97; Cal. Lab. Code § 2699(v)(1).

12  **II.   LEGAL STANDARD**

13        "An employee bringing a PAGA action does so as the proxy or agent of the state's labor
14  law enforcement agencies, . . . who are the real parties in interest." *Sakkab v. Luxottica Retail N.*
15  *Am. Inc.*, 803 F.3d 425, 435 (9th Cir. 2015) (citations and quotations omitted). Because a
16  settlement of PAGA claims compromises a claim that could have otherwise been brought by the
17  state, PAGA provides that "court[s] shall review and approve any settlement of any civil action
18  filed pursuant to [PAGA]." Cal. Lab. Code § 2699(s)(2). In a PAGA suit, "[i]f the representative
19  plaintiff prevails, the aggrieved employees are statutorily entitled to 25% of the civil penalties
20  recovered while the LWDA [Labor & Workforce Development Agency] is entitled to 75%."
21  *Urbino v. Orkin Servs. of Cal. Inc.*, 726 F.3d 1118, 1121 (9th Cir. 2013) (citing Cal. Lab. Code
22  § 2699(i)). PAGA claims "need not satisfy [Federal] Rule [of Civil Procedure] 23 class
23  certification requirements." *Hamilton v. Wal-Mart Stores, Inc.*, 39 F.4th 575, 583 (9th Cir. 2022).
24  However, in considering a motion for final approval of a PAGA settlement, courts within this
25  circuit utilize a standard similar to Rule 23, evaluating whether the PAGA settlement is
26  "fundamentally fair, reasonable, and adequate." *See Haralson v. U.S. Aviation Servs. Corp.*,
27  383 F. Supp. 3d 959, 972 (N.D. Cal. 2019) (collecting cases).

The court, as it has done in the past, refers to the factors in *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998), *overruled on other grounds*, *DZ Rsrv. v. Meta Platforms, Inc.*, 96 F.4th 1223 (9th Cir. 2024), to evaluate the PAGA settlement. *See, e.g.*, *Pena v. Taylor Farms Pac., Inc.*, No. 13-01282, 2021 WL 916257, at *7–8 (E.D. Cal. Mar. 10, 2021); *Decker v. AllStates Consulting Servs., LLC*, No. 18-03216, 2020 WL 7769842, at *2 (E.D. Cal. Dec. 30, 2020). The *Hanlon* factors, designed for use in evaluating class action settlements, include (1) the strength of a plaintiff's case; (2) the risk, expense, complexity and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed; (6) the expertise and views of counsel; (7) the presence of government participation; and (8) the reaction of class members to the proposed settlement. *See Hanlon*, 150 F.3d at 1026.

## III.   ANALYSIS

### A.   Gross Settlement Amount (GSA)

The GSA ($1,270,000) is 65 percent of the potential maximum recoverable penalties ($1,945,550). *See* Settlement Mem. at 17–18; Workman Decl. ¶ 20, ECF No. 93-3. Courts in the Eastern District and otherwise have approved settlement awards in PAGA cases for much smaller percentages of the potential maximum value. *See, e.g.*, *Cooks v. TNG GP*, No. 16-01160, 2021 WL 5139613, at *9 (E.D. Cal. Nov. 4, 2021) (approving amount "roughly 0.158 percent of the maximum recoverable PAGA penalties"). Furthermore, "Anderson and his Counsel view this [as] an excellent Settlement." Settlement Mem. at 18. Given the risk of further litigation, the high value of the PAGA penalty compared to the total settlement amount, the high value of the settlement amount in relation to the maximum recoverable penalties, the presentation to the government and the lack of negative concerns from aggrieved employees to the proposed settlement, the *Hanlon* factors weigh in favor of finding the settlement to be reasonable. The court approves the gross settlement award.

### B.   Attorneys' Fees

Anderson requests attorneys' fees of $419,100. Att'y Fees Mem., ECF No. 93-2. "The court may award reasonable attorney's fees . . . that are authorized by law or by the parties'

agreement." Fed. R. Civ. P. 23(h).  The court must ensure the agreed-upon award is reasonable. *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 941 (9th Cir. 2011).  The Ninth Circuit has set the benchmark for attorney's fees at 25 percent of the gross settlement amount, *see In re Easysaver Rewards Litig.*, 906 F.3d 747, 754 (9th Cir. 2018), though "courts may adjust this figure upwards or downwards if the record shows special circumstances justifying a departure." *Ontiveros v. Zamora*, 303 F.R.D. 356, 372 (E.D. Cal. 2014) (internal quotation marks omitted) (citing *In re Bluetooth*, 654 F.3d at 942).  The court may conduct a lodestar cross-check in evaluating the reasonableness of a percentage recovery of a common fund. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050 (9th Cir. 2002).  Here, the proposed award for attorneys' fees equals 33 percent of the GSA.  *See* Settlement Mem. at 8.  California courts have found attorneys' fees awards upwards of 33 percent to be reasonable in wage and hour class actions, and federal courts including this one have not rejected out of hand the higher percentage in determining reasonable fee awards.  *See, e.g.*, *Greer v. Dick's Sporting Goods, Inc.*, No. 15-1063, 2019 WL 4034478, at *7 (E.D. Cal. Aug. 27, 2019) ("California courts more often deem awards of up to 33 percent reasonable and less often expressly refer to a 25 percent benchmark.").  Here, as it typically does, the court conducts a lodestar cross-check to evaluate the award request.

      A lodestar cross-check supports the fees here.  In conducting such a cross-check, a court "must start by determining how many hours were reasonably expended on the litigation, and then multiply those hours by the prevailing local rate for an attorney of the skill required to perform the litigation." *Moreno v. City of Sacramento*, 534 F.3d 1106, 1111 (9th Cir. 2008) (citation omitted).  "This amount may be increased or decreased by a multiplier that reflects any factors not subsumed within the calculation, such as 'the quality of representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of nonpayment.'" *Wilson v. Metals USA, Inc.*, No. 12-568, 2021 WL 516585, at *6 (E.D. Cal. Feb. 11, 2021) (quoting *In re Bluetooth*, 654 F.3d at 941–42 (citation omitted)).  "Foremost among these considerations, however, is the benefit obtained for the class." *In re Bluetooth*, 654 F.3d at 942.

      Here, Anderson's counsel spent a total of 1208.20 hours litigating this case. Workman Decl. ¶ 36 (billable hours invoice for all work completed in case). The fees requested for the firm's attorneys, law clerks and paralegals are summarized below:

- Robin G. Workman (30 years' experience): 724.73 hours at a rate of $750 per hour, with a pre-multiplier lodestar of $543,547.50;
- Nancy Coan (30+ years' experience): 51.70 hours at a rate of $650 per hour, with a pre-multiplier lodestar of $33,605.00;
- Rachel E. Davey (3 years' experience): 84.70 hours at a rate of $375 per hour, with a pre-multiplier lodestar of $31,762.50;
- Suzanne Klotz (30+ years' experience): 19 hours at a rate of $650 per hour, with a pre-multiplier lodestar of $12,350.00;
- Kyle W. Thompson (law clerk): 55.65 hours at a rate of $200 per hour, with a pre-multiplier lodestar of $11,130.00;
- Cheryl Porter (paralegal): 180.27 hours at a rate of $200 per hour, with a pre-multiplier lodestar of $36,054.00;
- Jonda Miller (paralegal): 78.70 hours at a rate of $200 per hour, with a pre-multiplier lodestar of $15,740.00; and
- Amie Conklin-Rauch (paralegal): 13.45 hours at a rate of $200 per hour, with a pre-multiplier lodestar of $2,690.00.

*Id.*

      Having reviewed the billable hours, the court finds the number of hours was reasonable in this case, particularly in light of its six-year duration with extensive motions practice and settlement conferences. *See* Att'y Fees Mem. at 16 (noting total hours do not include time "assisting the Settlement Administrator with any administration issues and answering Aggrieved Employees' questions"). In the context of their overall billing and distribution of work, the attorneys' rates based on their respective years of experience align favorably with the rates generally deemed acceptable by courts in this district, which is the relevant venue for considering acceptable rates. *See Smothers v. NorthStar Alarm Services LLC*, No. 17-548, 2020 WL

1532058, at *9 (E.D. Cal. Mar. 31, 2020) (applying $695 per hour in lodestar calculation for attorney with 30 years' experience). Multiplying counsel's hours by their hourly rates yields a lodestar amount of $686,879. Because the arbitrator awarded counsel $78,243.60 in attorneys' fees, the current lodestar amount is the remaining difference, or $608,635.40. *See* Att'y Fees Mem. at 16. When compared to the $419,500 fee counsel requests, the lodestar multiplier is 0.61, reflecting the lower amount of fees requested. *See* Settlement Mem. at 8. This multiplier is reasonable. *Cf. Vizcaino*, 290 F.3d at 1050–51, 1051 n.6 (noting multiples as high as four "are frequently awarded in common fund cases when the lodestar method is applied" (marks and citation omitted)).

### C. Litigation and Administrative Costs

Anderson seeks $51,183.22 in litigation costs and $9,000 in settlement administration costs. *See* Att'y Fees Mem. at 15.[1] The court must determine whether the proposed award of costs and expenses is appropriate. Fed. R. Civ. P. 23(h). "[I]n evaluating the reasonableness of costs, the judge has to step in and play surrogate client." *Ross v. Bar None Enters., Inc.*, No. 13-234, 2015 WL 1046117, at *11 (E.D. Cal. Mar. 10, 2015) (internal quotation marks, citation omitted). "In keeping with this role, the court must examine prevailing rates and practices in the legal marketplace to assess the reasonableness of the costs sought." *Id.* (internal marks and citation omitted). Counsel seeks reimbursement for court and filing costs, photocopying charges, deposition and hearing transcript fees, expert fees, delivery fees, mediation fees, travel expenses incurred to attend depositions and arbitration, claims administrator fees and online research fees. *See* Settlement Mem. at 19. Courts frequently approve reimbursement for such costs. *See, e.g.*, *Barbosa v. Cargill Meat Sols. Corp.*, 297 F.R.D. 431, 454 (E.D. Cal. 2013) ("[C]osts incurred, which include travel, mediation fees, photocopying, private investigator to locate missing Class Members, and delivery and mail charges . . . are routinely reimbursed." (citation omitted)).

---

[1] The court notes $51,183.22 is the amount Anderson repeatedly mentions and seeks in his motion; however, in a footnote, counsel states for the first time they are capping costs they seek at $25,000. *See* Att'y Fees Mem. at 14 & n.12 ("Class Counsel seeks recovery of $25,000 pursuant to the terms of the Settlement Agreement."). The court assumes $51,183.22 is the correct number since it is what counsel references repeatedly in their memorandum.

However, although the Workman declaration suggests the total cost reimbursement sought here excludes costs the arbitrator already awarded, *see* Workman Decl. ¶¶ 34, 36; Att'y Fees Mem. at 7 & n.1, Anderson still seeks reimbursement for expert fees for its retained expert, *compare* Prior Att'y Fees Mem. at 26, ECF No. 56-2, *with* Settlement Mem. at 19; Workman Decl. ¶ 46, despite the court's explanation in its prior order the Federal Arbitration Act only allows reimbursement for court-appointed experts, *see* Order (Dec. 20, 2022) at 16. The court thus deducts the expert fees counsel has included, $12,478.75, from the total litigation cost Anderson seeks of $51,183.22, resulting in $38,704.47.

Additionally, the court in its prior order noted Anderson cannot be reimbursed for travel expenses associated with the "arbitration," for which he was already reimbursed by the arbitrator, *see id.* at 15–16, but Anderson has again included these travel expenses in his instant request, *see* Att'y Fees Mem. at 19; Workman Decl. ¶ 46 (identifying "travel expenses incurred to attend depositions and arbitration of $6,134.70"). The court will reduce travel expenses to account for those travel expenses awarded by the arbitrator. Because the arbitrator awarded costs of $17,189.36 and the firm's total costs for the arbitration and litigation is $68,372.58, the court uses the relative ratio of the total costs, or 25 percent, to determine the required reduction in travel expenses. The travel expenses, $6,134.70, reduced by 25 percent, amount to $4,601.03. Deducting the difference from the total costs calculated above after discounting expert fees ($38,704.47), the court's award for litigation costs is $37,170.79.[2]

In sum, the court finds the request for reimbursement of litigation costs, after discounting the expert fees and travel expenses from arbitration, to be reasonable. The administrative costs also are reasonable. *See McClure v. Waveland Servs., Inc.*, No. 18-01726, 2021 WL 5204151, at *5 (E.D. Cal. 2021) (awarding $12,500 in administration costs for a maximum settlement amount of $290,000).

---

[2] $38,704.47 - $1,533.68 = $37,170.79.

**D.     Enhancement Award**

Counsel also seeks a $10,000 enhancement award for Anderson.  A settlement agreement should "not improperly grant preferential treatment to class representatives or segments of the class[.]" *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078,1080 (N.D. Cal. 2007).  Representative plaintiffs may receive reasonable incentive payments, *Staton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003), and authorization of payments is within the court's discretion, *Adams v. City of Honolulu*, No. 12-667, 2017 WL 3880651, at *1 (D. Haw. Sept. 5, 2017).  In evaluating the suitability of an incentive payment courts may consider:

> (1) the risk to the class representative in commencing suit, both financial and otherwise; (2) the notoriety and personal difficulties encountered by the class representative; (3) the amount of time and effort spent by the class representative; (4) the duration of the litigation; and (5) the personal benefit, or lack thereof, enjoyed by the class representative as a result of the litigation.

*Greer*, 2020 WL 5535399, at *3 (citing *Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 299 (N.D. Cal. 1995)).  To determine the amount of time and effort spent by a class representative the court examines "evidence demonstrating the quality of plaintiff's representative service, such as substantial efforts taken as class representative to justify the discrepancy between [his] award and those of the unnamed plaintiffs." *Flores v. ADT LLC*, No. 16-29, 2018 WL 6981043, at *1 (E.D. Cal. Mar. 19, 2018) (citation and internal quotation marks omitted; alteration in original).  The court also considers the "proportion of the [representative] payment[s] relative to the settlement amount, and the size of each payment." *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d, 934, 947 (9th Cir. 2015).

Here, all but one of the applicable factors weigh in favor of approval.  The first factor weighs in favor of approval because plaintiff assumed risk in commencing the suit given his risk of loss of future employment opportunities as prospective employers may conduct background checks and be deterred by plaintiff's having filed a lawsuit against a former employer.  *See* Settlement Mem. at 24–25.  The second factor weighs against approval as the record does not indicate the case resulted in notoriety or personal difficulties for Anderson.  *See id.*  The third factor weighs in favor of approval, as Anderson spent significant time assisting with the litigation

by "obtain[ing] and provid[ing] documents, provid[ing] information regarding Defendant's policies and procedures, [being] deposed, travel[ing] from Las Vegas to San Francisco to be present at and participate in the arbitration, always ma[king] himself available when needed, including during the mediation, and timely respond[ing] to inquiries from Class Counsel." *Id.* at 24; Workman Decl. ¶ 25; Anderson Decl. ¶¶ 8–10, ECF No. 93-5.  The fourth factor, duration, weighs in favor of approval as Anderson filed his lawsuit in 2018, *see* Compl., ECF No. 1, and did not file this motion until 2024, six years later, *see* Settlement Mem.  The fifth factor also weighs in favor of approval because Anderson will derive only a modest personal benefit in comparison to the other class members for the financial risk he faced in filing the action as the only named plaintiff and for agreeing to a general release of all claims.  *See* Settlement Mem. at 24–25.  In sum, the *Van Vranken* factors support granting Anderson a $10,00 enhancement award.

### E. PAGA Penalty

Parties seeking approval of a PAGA settlement must submit the proposed settlement to the California LWDA for comment at the same time they submit their motion for preliminary approval of the settlement. *Ramirez v. Benito Valley Farms, LLC*, No. 16-04708, 2017 WL 3670794, at *2 (N.D. Cal. Aug. 25, 2017); Cal. Lab. Code § 2699(s)(2) ("The proposed settlement shall be submitted to the agency at the same time that it is submitted to the court."). This requirement has been met, as the Workman declaration represents "[a] copy of the Settlement Agreement was provided to the LWDA[,]" *see* Workman Decl. ¶ 17, Ex. A to Settlement Mem., ECF No. 93-1, and Anderson has provided a copy of the email confirming receipt of the settlement agreement, *see* LWDA E-Mail at 1, Ex. L to Workman Decl., ECF No. 93-3.  The parties did not report any comments from the LWDA, and the court has not received comments either.  *See Conti v. L'Oréal USA S/D, Inc.*, No. 19-0769, 2023 WL 4600532, at *18 (E.D. Cal. July 18, 2023) (finding lack of comments from LWDA supported final approval of PAGA settlement).

The court denied Anderson's previous request for its failure to allocate 75 percent of the civil penalties to LWDA, as required under PAGA.  *See generally* Order (Dec. 20, 2022).  Prior

9

1  to July 1, 2024, the California Labor Code required 75 percent of the PAGA penalty to be paid to
2  the LWDA; however, an amendment changed the distribution to 65 percent to the LWDA and 35
3  percent to the aggrieved employees, effective July 1, 2024. *See* Cal. Lab. Code § 2699(m). As
4  noted above, the parties agree the amendment does not apply to this proposed settlement because
5  this action was brought before June 19, 2024. *See* Joint Status Rep., ECF No. 97 (citing
6  California Labor Code § 2699(v)(1)).

       In his memorandum in support of final approval of the settlement agreement, Anderson states the gross settlement amount (GSA) is $1,270,000, and the LWDA will receive 75 percent of the GSA, $952,500, "minus attorneys' fees[] ($419,000), costs ($51,183.22), representative fee ($10,000) and administration costs ($9,000)," or $463,316.78.[3] Settlement Mem. at 18–19. He does not clearly explain his method in determining the various figures in the settlement award breakdown. *See generally* Settlement Mem. The court follows the model of other courts calculating the allocation of PAGA settlement awards by subtracting from the GSA the costs and fees first, and subsequently assessing the remaining amount as the total PAGA penalty.

       Accordingly, the court begins with the GSA ($1,270,000) and subtracts the attorneys' fees ($419,100), the litigation costs ($37,170.79), the settlement administration costs ($9,000) and plaintiff's enhancement award ($10,000), which yields a net number of $795,829.21. The total PAGA penalty, or 75 percent of $794,729.21 is $596,046.91.

### IV. CONCLUSION

       The court **grants** the motion for final approval of class settlement. The court approves the gross settlement amount of $1,270,000, which includes $419,100 in attorneys' fees, $37,170.79 in litigation costs, $9,000 in settlement administration costs, $10,000 as plaintiff's enhancement award and $794,729.21 remaining for the aggrieved employee and PAGA penalty, which amounts to $198,682.30 and $596,046.91, respectively. The court retains jurisdiction of all matters relating to the interpretation, administration, implementation, effectuation and enforcement of this order and the settlement until all settlement funds are distributed. The parties

---

[3] Anderson mistypes or miscalculates this amount as 493,216.78 in its motion. *See* Settlement Mem. at 18–19.

shall **notify the court within seven (7) days after the settlement becomes fully funded**. At that point, the court will enter its Final Judgment and Order of Dismissal with Prejudice.

This order resolves ECF No. 93.

IT IS SO ORDERED.

DATED: November 18, 2024.

_____
SENIOR UNITED STATES DISTRICT JUDGE